THE HOWE MACHINE COMPANY, Respondent, *v.* EZRA FAR-
RINGTON, Appellant.

82    121
120    566
82    121
138    206

The concealment which will avoid a guaranty must be a fraudulent one ; if not fraudulent in fact or in law, the defense is not made out.

In order to exonerate a surety because of delay in proceeding against the principal, the surety must show explicit notice or request to the creditor to take legal proceedings to collect the debt or enforce the liability.

In 1872 one D. was appointed by plaintiff agent for the sale of its sewing-machines, on commission. He was to hold the machines consigned to him and the proceeds of sales, less commissions, as the property of plaintiff, to remit proceeds and deliver the machines in his hands when called for. In December, 1874, D. gave a bond, with defendant as surety, conditioned for the payment by D. of his indebtedness to plaintiff existing at the date of the bond, or which might thereafter be incurred by him on account (among other things) of his failure to account for merchandise consigned to him by plaintiff. At that date D. was indebted for a number of machines for which he had failed to account; this was not told to defendant, and he made no inquiries. It did not appear that D. had been guilty of any dishonesty. In September, 1875, defendant gave notice to plaintiff not to deliver any more machines on the credit of the bond. In an action upon the bond, defendant was held liable for the machines delivered to D. after the date of the bond and before the notice, for which he failed to account or to deliver on demand. *Held*, no error ; that, in the absence of fraud, defendant was not exonerated from liability by reason of the omission of plaintiff to inform him of the default of D. prior to the execution of the bond.

Also, *held*, that evidence of representations made by D. at the time he asked defendant to sign the bond, to the effect that he was not in default to plaintiff, was properly excluded.

*It seems*, that if it had appeared that a part of the machines for which defendant was held liable were delivered after D. had made default in accounting for some previously delivered, this fact would not have exonerated defendant from liability for those delivered after default.

The referee found that when defendant gave the notice, plaintiff's agent stated that he thought the amount due plaintiff from D. would not exceed $300 ; while in fact at that time it considerably exceeded that sum ; that D. at the time was possessed of property of the value of at least $300, and that defendant could and would have secured himself to the extent of that sum, except for what was thus said by plaintiff's agent. *Held*, that the mistake of the agent was not calculated to mislead defendant as to any matters disclosed to him, and the fact that it did affect his conduct to his injury, did not create an estoppel.

Defendant also testified that plaintiff's agent, at the time such notice was

given, stated to him that he need give himself no uneasiness; that he would suffer no loss, as the indebtedness would be got from D. *Held*, that this did not establish an estoppel.

In December, 1875, plaintiff took from D. a bill of sale of certain chattels to secure the payment of $300; the property was not delivered to plaintiff and it never had possession; it was left with D. with the agreement that he was to sell and remit the proceeds; a small sum was realized therefrom which was credited. *Held*, that the failure of plaintiff to enforce the security, or to secure the application of the property upon the debt, did not relieve defendant.

Also, *held*, that notice to defendant of D.'s default, or a demand of payment of him as guarantor, was not a condition precedent to bringing the action.

(Argued June 18, 1880; decided September 21, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiff entered upon the report of a referee. (Mem. of decision below, 16 Hun, 591.)

This action was upon a bond executed by defendant, as surety for one Davis, the condition of which and the material facts are set forth substantially in the opinion.

*Thomas Corlett* for appellant. Plaintiff having concealed from defendant the fact that his principal was in default when the bond was executed, is not entitled to recover. (*Montague* v. *Titcome,* 2 Vern. 518; *Smith* v. *Bank of Scotland,* 10 Cl. & Fin. 934–943; *Railton* v. *Matthews,* 1 Dow. 272–292; *Phillips* v. *Foxall,* L. R., 7 Q. B. 672; *Burgess* v. *Eve,* L. R., 13 Eq. 450; *Sanderson* v. *Aston,* L. R., 8 Exch. 73; Fell on Guar. 245; *McKecknie* v. *Ward,* 58 N. Y. 541; *Atlantic & Pacific Tel. Co.* v. *Barnes,* 64 id. 385; *Craft* v. *Isham,* 13 Conn. 28; 17 Pick. 234; *Parsons* v. *Sutton,* 66 N. Y. 92; *Shannon* v. *Comstock,* 21 Wend. 457, 461; *Hamilton* v. *McPherson,* 28 N. Y. 72; *Dillon* v. *Anderson,* 43 id. 231, 237.) On the 11th day of September, 1875, the defendant, by notice, terminated his liability on the bond. (*Hunt* v. *Roberts,* 45 N. Y. 691; *Payne* v. *Jones,* 76 id. 274, 279; *Vartie* v. *Underwood,* 18 Barb. 561; *Wright* v. *Austin,* 56 id. 13;

*Bridenbecker* v. *Lowell*, 32 id. 9; *Remsen* v. *Beekman*, 25 N. Y. 552, 561; *Coleman* v. *Tallman*, 67 id. 95; *Smith* v. *Townsend*, 25 id. 479; *Wakefield* v. *Truesdell*, 55 Barb. 602; *Beard* v. *Root*, 4 Hun, 356; *Dayton* v. *Trull*, 23 Wend. 345; *Darnell* v. *Morehouse*, 45 N. Y. 64; *Barnes* v. *Barrow*, 61 id. 39; *Grant* v. *Smith*, 46 id. 93; *Bangs* v. *Strong*, 7 Hill, 250; *Calvo* v. *Davies*, 8 Hun, 222; affirmed in 73 N. Y. 211.) Plaintiff is estopped from insisting that the defendant is not discharged. (*Vantis* v. *Olmsteed*, 66 N. Y. 113; 3 Hun, 744; *Blair* v. *Wait*, 69 N. Y. 113; *Gallagher* v. *Nichols*, 60 id. 438.) It is immaterial whether the property obtained by the plaintiff from Davis in December was worth more or less than $300. (*Cocks* v. *Barker*, 49 N. Y. 107; *Wheeler* v. *Billings*, 38 id. 263; *Bowe* v. *Parsons*, 6 Hun, 338; *O'Sullivan* v. *Roberts*, 10 J. & Sp. 282.) This action could not in any event be maintained against the defendant without notice being first given of Davis' defaults. (*Gath* v. *Simons*, 45 Ind. 262; *Howe* v. *Nichols*, 22 Me. 175; *Wildes* v. *Savage*, 1 Story, 22; *Douglas* v. *Reynolds*, 7 Peters, 113; *Paige* v. *Parker*, 8 Gray, 211; 58 N. Y. 553, 554.) This bond does not cover or include acts of dishonesty or wrongful conversions on the part of Davis, but only extends to debts and liabilities of that description which it was contemplated would or might arise. (*Union Bk.* v. *Clossey*, 10 Johns. 271, 272; *Wilson* v. *Edwards*, 6 Lans. 134; *Maynard* v. *Syracuse, Bing. & N. Y. R. R. Co.*, 71 N. Y. 180.)

*M. A. Whitney* for respondent. The bond is the joint and several obligation of Davis and the defendant, and either or both may be proceeded against. (Code of Procedure, § 120; *Brainard* v. *Jones*, 11 How. 569; *Quigley* v. *Walter*, 2 Sweeney, 175.) Davis' declaration, at the time of making payment for machines, and directing the application of payments so made, were a part of the *res gestæ*, and therefore competent. (1 Greenleaf on Ev. § 187; *Fox* v. *Parker*, 44 Barb. 541; *Fenner* v. *Lewes*, 10 Johns. 38; 1 Cow. & Hill's notes to Phillips' Ev. 262.) No demand was necessary before bringing

the action. (*McKensie* v. *Farrell*, 4 Bosw. 192.) It was no part of the plaintiff's duty to seek out the defendant and explain to him the nature and extent of his obligation. (*Western N. Y. Life Ins. Co.* v. *Clinton*, 66 N. Y. 326.) Or to notify him of the default on the part of his principal. (*McKecknie* v. *Ward*, 58 N. Y. 541; *At. & Pac. Tel. Co.* v. *Barnes*, 64 id. 385; *Board of Suprs.* v. *Otis*, 62 id. 88; *Magee* v. *Manhattan L. Ins. Co.*, 51 How. Pr. 413.) It was the business of the defendant to ascertain the relation of his principal to the plaintiff, and not the plaintiff's fault that he did not do so. (*Western Ins. Co.* v. *Clinton*, *supra* ; *Magee* v. *Manhattan L. Ins. Co.*, 51 How. Pr. 413.) Breaches were sufficiently assigned in the complaint. (*Hughes* v. *Smith*, 5 Johns. 167 ; *Smith* v. *Jansen*, 8 id. 111; *Brown* v. *Stebbins*, 4 Hill, 154.) Plaintiff's rights under the bond were not impaired by the security taken by it from Davis. (*Kohler* v. *Matlage*, 72 N. Y. 259 ; *Harding* v. *Tifft*, 75 id. 461; *Gilbert* v. *Marsh*, 17 Hun, 519.)

Andrews, J. The bond executed by Davis and the defendant was to secure the payment by Davis of his indebtedness or liability to the Howe Machine Company, existing at the date of the bond, or which might thereafter be incurred by him, on account (among other things) of his failure to deliver or account for merchandise or property consigned to him by the obligee. The bond is dated December 21, 1874. Davis, in 1872, was appointed plaintiff's agent for the sale of the Howe Sewing Machine on commission, in Holland and Sardinia in Erie county. His authority was defined in a written agreement, executed by both parties. By this agreement Davis was to hold machines consigned to him by the company, and the proceeds of sales (after deducting his commission) as the property of the company, and to report to the company weekly, and remit the proceeds of sales, and deliver the machines to the company whenever demanded. Before the date of the bond Davis had received on consignment fifty-seven machines, for which he had failed and neglected to account. Subsequent to the execution of the bond, and prior to the 11th of September, 1875, he

received on consignment thirty-four machines, for all of which he has accounted, except five. On the 11th of September, 1875, the defendant notified the plaintiff not to deliver any more machines to Davis on the credit of the bond. The company, however, continued to consign machines to him until March, 1876.

The referee rejected the claim of the plaintiff, for machines delivered prior to its date, on the ground, as may be inferred from the case, of a want of consideration for the defendant; undertaking to pay the indebtedness of Davis to the company, then existing. He also rejected the claim to recover for machines delivered subsequent to the notice of September 11, 1875. He found that the defendant was liable for the failure of Davis to account for, or deliver upon demand the five machines consigned between the date of the bond and the giving of the notice. The liability of the defendant as surety for the failure of Davis to account for or deliver these machines is the only question in this case.

It is claimed that the defendant is exonerated from liability by reason of the omission of the plaintiff to inform the defendant of the default of Davis, in respect of the machines consigned to him prior to the execution of the bond. If any fraud was practiced by the plaintiff to induce the defendant to become surety for Davis, the bond cannot be enforced. The non-disclosure of material facts known to the plaintiff, and of which the defendant was ignorant, which it was the duty of the plaintiff to communicate to the defendant when he entered into the guaranty, would operate as a fraud and relieve him from liability. There may be circumstances known to a party taking a guaranty for the conduct of another, of so decisive a character that it could not be supposed that if known to the surety he would have entered into the obligation, and in such a case the party taking the security cannot withhold the information and enforce the obligation. The case of a master who takes a bond for the fidelity of a servant or agent, who had previously embezzled his property, and whom he knew to be dishonest and unworthy of confidence, without disclosing the

facts known to him, is an illustration. The master in the case supposed could not innocently be silent. In demanding security for the honesty of the servant, he impliedly represents that to his knowledge he is not dishonest, and the application for security, as said by Lord Eldon, in *Smith* v. *Bank of Scotland* (1 Dow's Parl. R. 272), is a "holding of the servant forth to the sureties as a trustworthy person." (See, also, *Railton* v. *Mathews*, 10 Cl. & Fin. 934; *Phillips* v. *Foxall*, L. R., 7 Q. B. 672.) The basis of the defense of non-disclosure is fraud, and if the non-communication is not fraudulent in fact or law, the defense is not established, and the rule which prevails in contracts of marine insurance that all material circumstances known to the assured must be disclosed, and that the omission to do so avoids the policy, though the concealment is not fraudulent, does not apply to an ordinary guaranty. (*North British Ins. Co.* v. *Lloyd*, 10 Exch. 523.) The concealment which will avoid a guaranty need not necessarily have been with a view to the advantage of the person taking it. If designed to prejudice the surety, and prejudice results from the concealment, it is sufficient to constitute a fraud, which will avoid the obligation. (*Railton* v. *Mathews, supra.*) In *Hamilton* v. *Watson* (12 Cl. & Fin. 109), Lord Campbell, in speaking on the subject of disclosure to a surety of facts known to the party to whom he becomes bound, says: "I should think this might be considered as the criterion, whether the disclosure ought to be made voluntarily, namely, whether there is any thing that might not usually be expected to take place between the parties to the transaction."

In the case before us, there is no finding that the plaintiff fraudulently concealed from the defendant, when he executed the bond, the state of the account between the company and Davis, and there is no evidence from which fraud can be inferred. The existence of the default of Davis on the prior transactions with the company is found, but it is not found under what circumstances it originated. It does not appear that Davis had been guilty of any dishonesty, or that his indebtedness to the company may not have been attributable

to misfortune, or other cause, consistent with his honesty. The company required Davis to furnish a bond to cover past and future indebtedness. He procured the defendant to execute the bond in question. The defendant had no communication with the company before signing it. The bond in terms referred to an existing indebtedness of Davis. The defendant made no inquiry of the company to ascertain the particulars, and the company made no representation. If the defendant deemed it material to be informed of the origin, nature or extent of the existing indebtedness, he should have inquired of the company before executing the bond. The company was under no duty to seek the defendant and make the disclosure. It was bound to act with good faith toward the defendant; but to hold the surety discharged by the omission to advise him of the particulars of the previous transactions with Davis, in the absence of any inquiry on the subject, would establish a rule which would make instruments of the character of the one in question of comparatively little value.

The evidence offered by the defendant to show that Davis, when he applied to him to sign the bond, represented that he was not in default to the plaintiff, was properly excluded. Davis, in procuring the defendant to execute the bond, was not acting as the plaintiff's agent, and the plaintiff is not responsible for any deception which Davis may have practiced upon the defendant to procure his signature, of which it was ignorant. (*Casoni* v. *Jerome*, 58 N. Y. 315; *Western N. Y. Life Ins. Co.* v. *Clinton*, 66 id. 326.)

The five machines for which a recovery was had were consigned to Davis at various times after the execution of the bond, and before the notice of September 11, 1875, and it is claimed that consignments were made of a part of these machines, after Davis had made default in accounting for some of the five machines previously delivered, and that the plaintiff could not continue to make consignments after knowledge of such default, without notice to the defendant, and hold the defendant responsible upon her guaranty for subsequent transactions. The general question raised by this

point was much considered in *McKecknie* v. *Ward* (58 N. Y. 541), and the authorities reviewed. It was there held that a surety for the payment by a vendee for goods to be delivered from time to time by the vendor was not discharged by mere forbearance on his part to enforce payment according to the terms of the contract of sale, and that in the absence of fraud or gross negligence, the surety was liable for the balance of the account, although it had accrued in part from sales made after the default of the vendee on prior sales. We think that the principle decided in *McKecknie* v. *Ward* is decisive of the point we are now considering. But it is unnecessary to determine whether there is any distinction between the cases, for the reason that it does not appear by the findings or the evidence that Davis had made default in respect to any of the five machines prior to the delivery of the whole number. He was, by the terms of the agreement between him and the plaintiff, to account for the proceeds of sales weekly, and deliver machines consigned on demand by the company. There was no proof that any of the five machines had been sold by Davis, or that he was in default in not remitting proceeds of sales, and so far as appears no demand of the machines was made by the company until after September 11, 1875, and after all the machines had been delivered. Until demand Davis was not in default unless he had previously sold the machines, and neglected to account for the proceeds according to the terms of his contract, and of this there is no evidence.

The defendant also insists that the plaintiff is estopped from claiming any liability against the defendant by what occurred on the 11th September, 1875, when the notice heretofore referred to was given. The referee finds that at the interview on that occasion between the plaintiff's general agent and the defendant, the agent informed the latter in answer to the defendant's inquiry, that Davis was in default, and that he thought the amount then due to the plaintiff was between $200 and $300, and that it would not exceed $300. In fact the liability of Davis to the plaintiff at that time considerably exceeded the sum named. The referee further finds

that at the time of this interview Davis was possessed of real and personal property of the value at least of $300, and that the defendant could and would have secured himself out of such property to the extent of that sum, except for what was said by the plaintiff's agent at this interview. Upon these facts no estoppel arises. The statement of the amount due from Davis was an estimate merely. So far as appears it was made in good faith, and without any intent to mislead the defendant. The defendant did not disclose that he was contemplating obtaining security of Davis. The object of his seeking the interview, as the agent had a right to infer from the conversation, was, to notify him not to continue consignments to Davis, in reliance upon the guaranty. "Equitable estoppels are applied for the prevention of fraud and are ordinarily based upon some action or declaration of a party intended to influence the action of others, and which it would be inequitable to allow to be gainsaid or controverted, because acted upon, and loss would ensue if a different position should be taken." (Allen, J., in *Board of Supervisors of Monroe County* v. *Otis et al.,* 62 N. Y. 96, and cases cited.) The mistake in stating the amount of Davis' indebtedness was not calculated to mislead the defendant as to any matter disclosed to the agent. The fact that it did affect his conduct to his injury did not create an estoppel, unless the connection between the statement and the omission to obtain security were so proximately related that the agent knew, or ought to have known, that the defendant's conduct in that respect would naturally result from the statement made. This cannot be said in respect to the transaction in question. The defendant's counsel, to strengthen the point made, refers to the evidence to show that other statements were made by the agent, in addition to those found by the referee. It is a sufficient answer to say that this court will not look into the evidence for facts, which if found would vitiate the judgment. (*Grant* v. *Morse,* 22 N. Y. 323; *Fabbri* v. *Kalbfleisch,* 52 id. 28; *Smith* v. *Glens Falls Ins. Co.,* 62 id. 86.) But we are of opinion that the facts referred to, if found, would not establish an estoppel. The son of the defend-

ant was present at the interview on the 11th of September. The defendant testified that as he was leaving the agent's office on that occasion, the latter said to him : " Go home, Mr. Farrington, give yourself no uneasiness on account of the bond ; I have never sued a bondsman yet, I shall get it of Davis, and you need not trouble yourself further about it." The son testifies that the agent said : " Mr. Farrington, don't give yourself any more uneasiness about this matter ; I assure you that no harm will come to you, for the amount is small, and Davis is doing a good business ; I manage to make my agents settle up satisfactorily some way, and I have never had to sue a bondsman yet." This statement at most can be regarded only as the expression, by the agent, of a confident opinion that Davis would pay the debt, and that the defendant would not be subjected to loss. The agent did not assume to discharge the defendant from his liability as guarantor, or agree to look only to Davis for payment, and the case is not brought within the decisions in *Harris* v. *Brooks* (21 Pick. 195) and *Hogaboom* v. *Herrick* (4 Vt. 131).

The plaintiff, on the 21st of December, 1875, took from Davis a bill of sale of certain chattels, as security for the payment of $300. The referee finds that the property was never delivered to the plaintiff by Davis, and that the plaintiff never had possession, and had realized therefrom only a small sum, which is credited in the account. The leaving of the chattels in the possession of Davis was contemplated when the security was taken as the bill of sale provides, that Davis is to have the right to dispose of the property and remit the proceeds. The plaintiff, so far as appears, has not surrendered the security, or interfered with it in 'any manner, nor does it appear that it has become in any way impaired. The mere failure of the plaintiff to enforce the security, or secure the application of the property upon the debt, does not relieve the defendant. (*Schroeppell* v. *Shaw*, 3 N. Y. 446 ; *Gahn* v. *Niemcewicz's Ex'rs*, 11 Wend. 312 ; Story's Eq. Jur., § 501.)

The point that defendant is relieved by the neglect of the plaintiff to collect the debt of Davis, after notice from the

defendant, is not well taken.  The rule is well settled that in order to exonerate a surety by delay of the creditor to proceed against the principal, the surety must show explicit notice or request to the creditor to take legal proceedings to collect the debt or enforce the liability of the principal.  ( *Valentine* v. *Farrington*, 2 Ed. Ch. 53 ; *Warner* v. *Beardsley*, 8 Wend. 194; *Singer* v. *Troutman*, 49 Barb. 182 ; 2 Am. Lead. Cas. 415.) There is no finding by the referee upon this question, and no evidence to bring the case within the rule.

Finally, notice to the defendant of Davis' default, or a demand of payment of him as guarantor, was not a condition precedent to bringing the action. (*Douglass* v. *Howland*, 24 Wend. 35 ; *Union Bank* v. *Coster*, 3 N. Y. 203 ; *Fox* v. *Parker*, 44 Barb. 541; *McKensie* v. *Farrell*, 4 Bosw. 192.)

The judgment should be affirmed.

All concur.

Judgment affirmed.