Henry Bostwick, Receiver, etc., Respondent, *v.* Samuel L. Van Voorhis, Executor, etc., Appellant.

91  353
131  159

An official bond given by B., upon his appointment as cashier of a bank, was conditioned "that he shall honestly and faithfully discharge the duties of such cashier, rendering at all times his undivided care and services to said bank, and shall obey the orders and directions of the president and directors of said bank lawfully given, and shall at all times account for and pay over all moneys  *  *  *  belonging to said bank, and shall keep true and accurate books," etc. The complaint in an action upon the bond, after averring specifically non-performance of each and all of the conditions alleged, that on the contrary thereof B. paid out the moneys of the bank fraudulently to various persons without any sufficient vouchers or security therefor, and fraudulently permitted various persons to overdraw their accounts without any security, and fraudulently altered and falsified the accounts and books of the bank so as to conceal such frauds, and has refused to pay over to the president and directors large sums of money, to-wit : $100,000. *Held,* that these allegations were a sufficient compliance with the provision of the Revised Statutes (2 R. S. 378, § 5), providing that in an action for the breach of a condition of a bond, other than for the payment of money, the " declaration shall assign the specific breaches for which the action is brought ; " also that if insufficient no reason was thereby furnished for a dismissal of the complaint, as defendant could have applied by motion to have them made more definite and certain, or for a bill of particulars.

The action was brought by the receiver of the bank who produced the bond. It appeared that B. was chosen cashier by resolution of the board of directors, passed January 17, 1869, and at the same time his bond was fixed at $30,000, with sureties "to be approved by the board." The amount stated was that of the bond in suit, which was dated January 30, 1869 ; it was executed by B. and six sureties, three of whom, including defendant's testator, were directors of the bank, and was witnessed by the then teller of the bank, who on the same day proved its execution before a justice of the peace, who was also a director. B. thereupon entered upon the discharge of his duties and continued to act as cashier until January, 1877. No direct evidence was given that the bond was ever delivered to or that it was ever in possession of the bank, or that the sureties were formally approved. It appeared that in 1873, one of the sureties wrote to one of the directors expressing a wish no longer to be bondsman for B., and that this letter was produced and read at the next meeting of the board of directors. *Held,* that it was a fair and legal inference from the facts that the bond was at or about its date delivered to and accepted by the bank ; and that an express approval in writing was not necessary to make the bond binding.

Sickels — Vol. XLVI.     45

B. was teller of the bank before he was appointed cashier. It was claimed that before such appointment, the directors were aware of certain misconduct on his part as teller which they concealed from the sureties. The misconduct complained of did not affect the moral character or official fidelity of B. *Held*, that the objection was untenable; that mere irregularities or omissions of duty, even if known to the directors, furnished no ground for a defense.

Before a bond in such a case can be avoided, fraud and bad faith, which has misled the surety to his damage, must be brought home to the obligee by clear and decisive evidence.

It appeared that the predecessor of B. in the office of cashier was also a defaulter. *Held*, that concealment of this fact from the sureties did not affect their liability as it in no way increased or related to the obligations assumed.

It was claimed that by the notice above referred to given by one of the sureties, of his desire to be released, he and the other sureties were relieved from liability for subsequent defaults by B. The notice was communicated to the board of directors November 8, 1873. It appeared that before the close of that month, the defalcation of B. amounted to more than the penalty of the bond. *Held*, that whatever might be the effect of such a notice, it could not operate immediately, but the bank had reasonable time, thereafter, to act, to notify the cashier and procure a new bond; and, therefore, that the notice did not affect the liability of the sureties.

It was claimed that defendant's testator was released, because of misconduct and embezzlement of B. in 1874. It did not appear that the directors had any knowledge that the action of B. complained of was fraudulent or dishonest. *Held*, that the objection was untenable; that if the directors were guilty of any negligence in not learning of the misconduct of B., defendant's testator, as one of them, was equally guilty with the others.

(Argued January 29, 1883; decided February 9, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made September 12, 1882, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the material facts are stated in the opinion.

*Milton A. Fowler* for appellant. It was necessary for plaintiff to assign in his complaint specific breaches of the bond. (2 Edm. Stats. 392; *Beers* v. *Shannon*, 73 N. Y. 292–

303.) The bond was never approved as to its sureties by the board of directors and hence the contract was incomplete and never became effective. (*Franklin B'k* v. *Cooper*, 36 Me. 179; *B'k of U. S.* v. *Dandridge*, 12 Wheat. 64; *Graves* v. *L. N. B'k*, 10 Bush, 23.) The misconduct of Bartow in concealing and covering for years the large default of the former cashier, which misconduct became known to the bank through its governing body, before the appointment of the cashier, constituted a want of good faith in the bank in giving to Bartow the indorsement of an appointment. (*Franklin B'k* v. *Cooper*, 36 Me. 179–197; *Phillips* v. *Foxhall*, 7 Q. B. 666, 674; *Railton* v. *Matthews*, 10 C. & F. 394; *Howe Machine Co.* v. *Farrington*, 82 N. Y. 121, 125; *Smith* v. *B'k of Scotland*, 1 Dow. Parl. R. 272; *A. & P. Tel. Co.* v. *Barnes*, 64 N. Y. 385.) The bank, as a corporation, was guilty of concealment and misrepresentation of its true condition in material matters, at and about the time of the appointment of Bartow as cashier, and the sureties are not liable. (*N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30–50; *Goodspeed* v. *E. H. B'k*, 22 Conn. 341; *Frankfort B'k* v. *Johnson*, 24 Me. 490; *Graves* v. *L. N. B'k*, Thomp. Nat. B'k Cases, 492; 1 Story's Eq. Jur., § 215.) The letter sent by Beverly Haight on the 31st of October, 1873, to Lewis H. White, vice-president of the bank, and by him presented to the board of directors, November 8, 1873, terminated his liability, if any existed, as to all acts occurring after that time. (*Howe Machine Co.* v. *Farrington*, 82 N. Y. 121–125.) The contract of guaranty is one of strict legal liability, and liability can in nowise be inferred. (*Myers* v. *U. S.*, 1 McLean, 493–495; 9 Cranch, 227–229.) When the principal discovers a default on the part of his employe or agent, it is his duty to at once notify the sureties of such default and make claim upon them for the damages he has sustained. If he does not so do, and chooses to continue the agent in his employ, he thereby avoids the bond as to all future misconduct of the agent. (Morse on Banking, 230–1, 234–5; *Phillips* v. *Foxhall*, 7 Q. B. 666; *Sanderson* v. *Aston*, 8 Exch. 73; *Burgess* v. *Eve*, 13 Eq. 450; *A. & P. Tel. Co.* v. *Barnes*, 64 N. Y. 385.)

*John Thompson* for respondent. Every presumption is in favor of the approval of the bond by the directors when presented, as otherwise the cashier could not have acted as such under the resolution, that a sufficient bond should be given. (Abbott's Trial Evidence, 37, § 34; *B'k of U. S.* v. *Dandridge*, 12 Wheat. 64; *Dedham B'k* v. *Chickering*, 3 Pick. 335; *Amherst B'k* v. *Root*, 2 Metc. 522; *Union B'k* v. *Ridgley*, 1 H. & G. 324; 1 Morse on Banking, 223, 235; *Mead* v. *Keeler*, 24 Barb. 20.) It is not necessary that the cashier's bond should be officially approved. (Morse on Banking, 235.) If the breaches assigned in the complaint were not sufficiently specific, the defendant's remedy was to apply, by motion, to have them made more specific before answering. (*Hart* v. *Seixas*, 21 Wend. 40.) The officers of the bank are under no obligations to investigate the books, when a bond is given; and their failure to do so constitutes no defense to an action on the bond unless the surety at the time requested such examination, and it was refused. (*Wayne* v. *Com. Nat. B'k*, 52 Penn. St. 343; Thompson's Nat. B'k Cases, 614 and notes; *A. & P. Tel. Co.* v. *Barnes*, 64 N. Y. 385; *Casoni* v. *Jerome*, 58 id. 316; *Supers.* v. *Otis*, 62 id. 88; *Atlas B'k* v. *Brownell*, 9 R. I. 168; 11 Am. Rep. 231.) A surety on the bond of a cashier of the bank is not discharged by the fact that the cashier had, before the bond was given, committed frauds upon the bank, if such frauds were unknown to the officers of the bank, even if they were guilty of gross negligence in not discovering it. (*Tapley* v. *Martin*, 116 Mass. 275; Thompson's Bank Cases, 611.) Unless the directors knew of the irregularities of the former cashier as a fraud, and not simply as an irregularity, the sureties would not be discharged. (*Amherst B'k* v. *Root*, 2 Metc. 522; *Minor* v. *B'k of Alexandria*, 1 Pet. 46; *U. S.* v. *Kirkpatrick*, 9 Wheat. 720; *Franklin B'k* v. *Stevens*, 39 Me. 532; *Farrington* v. *Stanley*, 60 id. 475; *Graves* v. *Lebanon B'k*, 10 Bush [Ky.], 23; *B'k of U. S.* v. *Elting*, 11 Wheat. 59; *Sup'rs* v. *Otis*, 62 N. Y. 88; Morse on Banking, 231; *State B'k* v. *Chatwood*, 3 Halst. 1.) No neglect or carelessness on the part of the directors in examin-

ing into the cashier's accounts would discharge the sureties. (*Tapley* v. *Martin*, 116 Mass. 275; Thompson's Nat. B'k Cases, 611, 616.)

EARL, J. This action was brought by plaintiff, as receiver of the National Bank of Fishkill, against the defendant, as sole executor of Coert A. Van Voorhis, deceased, who was one of the sureties upon the official bond of Alexander Bartow, cashier of the bank. The bond was joint and several and was signed by Bartow and six sureties, and the conditions thereof were as follows: "Whereas the above bounden Alexander Bartow has been duly appointed cashier of the said National Bank of Fishkill: Now if the said Alexander Bartow shall well, honestly and faithfully discharge the duties of such cashier, rendering at all times his undivided care and services to said bank, and shall obey the orders and directions of the president and directors of said bank lawfully given, and shall at all times account for and pay over all moneys which have come, now are, or hereafter may come into his hands, belonging to said bank, and shall keep true and accurate books of all the affairs of the said bank intrusted to him, then the above obligation to be void, or else to remain in full force and virtue."

Upon the argument before us several objections to the recovery were urged upon our attention, which we will consider separately. *First.* It is said that the complaint should have been dismissed because it did not assign specific breaches of the bond. This objection is based upon section 5, article 2, title 6, chapter 6, part 3, of the Revised Statutes, which provides that "when an action shall be prosecuted in any court of law upon any bond for the breach of any condition, other than for the payment of money, or shall be prosecuted for any penal sum for the non-performance of any covenant or written agreement, the plaintiff, in his declaration, shall assign the specific breaches for which the action is brought." The counsel for both parties assumed that this provision of the statutes was in force when this action was commenced in 1877; and without determining whether it was or not, we

think it was sufficiently complied with. It was alleged in the complaint that Bartow did not honestly and faithfully discharge his duties as cashier; that he did not render at all times his individual care and services to the bank; that he did not obey the directions of the president and directors of the bank, lawfully given; that he did not at all times account for and pay over all moneys which came into his hands belonging to the bank, and did not keep true and accurate books of all the affairs of the bank intrusted to him; but that on the contrary thereof, he paid out the moneys of the bank fraudulently to various persons, without any sufficient vouchers or security therefor, and fraudulently permitted various persons to overdraw their accounts without any security, and fraudulently altered and falsified the accounts and books of the bank so as to conceal such fraudulent doings, and that he has refused to pay over to the president and directors of the bank large sums of money, to-wit, $100,000 and over, refusing to account for the same, to the damage of the bank $100,000.

These allegations of breaches of the bond on the part of Bartow were a sufficient compliance with the statute. If they were not, no reason was thereby furnished for dismissing the complaint. The defendant could have applied to the court by motion, to have them made more specific and definite or for a bill of particulars.

*Second.* It is claimed that the complaint should have been dismissed because there was no evidence that the bond was ever delivered to, or accepted by the bank, or in its possession. Bartow was chosen cashier of the bank by a resolution of the board of directors on the 17th day of January, 1869, and at the same time his bond was fixed at $30,000, with sureties " to be approved by the board." The bond is dated January 30, 1869. It was executed in the presence of a witness, who was then teller of the bank, by Bartow and six sureties, three of whom, including the defendant's testator, were then directors of the bank, and its execution was proved by the witness on the same day before a justice of the peace, who was also a director of the bank. After his appointment, and after

the execution of the bond, Bartow entered upon the discharge
of his duties as cashier, and continued to act as such until Janu-
ary, 1877. There is no direct evidence that the bond was
ever delivered to the bank, and no witness was called to prove
that it was ever in the possession of the bank. The receiver
obtained possession of it some time after his appointment
in the year 1877, and he brought this action upon it and pro-
duced it upon the trial of the action. On the 31st of
October, 1873, one of the sureties addressed a letter to one of
the directors, in which he expressed a wish no longer to be
bondsman for Bartow, and that letter was by the director pro-
duced at the next meeting of the board of directors, soon there-
after held, and was there read, but the directors took no ac-
tion thereon. It is to be inferred that the bond was then in
the possession of the bank; and from all the facts, that Bartow
was required, as one of the conditions of his appointment, to
give the bond, that he entered upon the discharge of his du-
ties, and continued for about eight years to discharge them;
that the bond was found before the commencement of this ac-
tion and on the trial thereof, in the possession of the plaintiff,
who would be the legal custodian thereof, if it was after his
appointment found in the bank, it is a fair, just and legal in-
ference that it was at or about the time of its date actually de-
livered to, and accepted by, the bank. It was in the precise
sum and in the form required by the resolution of the board
of directors. It was executed for the purpose of delivery to
the board. It was the duty of the board to take it, and they
manifested an intention, by resolution, to discharge their duty.
It cannot be presumed that in violation of their expressed pur-
pose the directors did not take, receive and approve the bond.
From the fact that the plaintiff, representing the bank, had
the bond, which had been executed in the manner and under
the circumstances mentioned, in his possession soon after his
appointment as receiver, the inference, in the absence of count-
ervailing proof, is certainly allowable that he found it among
the papers and assets of the bank, and that it thus came law-
fully into his possession. The circumstance that no entry is

found in the minutes of the board of directors showing that the bond had been received and approved is not, without other proof, of much significance. An express approval of the bond in writing was not necessary in order to make it binding upon Bartow and his sureties. If it was actually delivered to and received and held by the bank, there was a sufficient approval and acceptance thereof.

These views are sufficiently sustained by the *Bank of the United States* v. *Dandridge* (12 Wheat. 64); *Graves* v. *Lebanon Nat. B'k* (10 Bush, 23; 19 Am. Rep. 50); Morss on Banking (2d ed.), 235, and cases cited. The rule to be formulated from these authorities is, that the fact of the possession by the bank of such a bond, in due form, legally executed and complete in every respect, the officer having been allowed to enter upon his duties, is evidence which of itself will suffice to authorize a suit upon it as having been delivered, accepted and approved with all requisite formality.

*Third.* Bartow was teller of the bank before he was appointed cashier thereof, and it is claimed that the directors, before his appointment as cashier, were aware of certain misconduct of his as teller, which they concealed from the sureties, and which they were bound, acting in good faith, to have made known to them. It is undoubtedly true that if the directors had knowledge that Bartow had been dishonest and unfaithful in his office as teller, they were bound to apprise the sureties of that fact, otherwise they could not hold them. But mere irregularities or omissions of duty on the part of Bartow while he was acting as teller, which did not affect his moral character or his official integrity and fidelity, even if known to the directors, would not enable the sureties to defend upon the ground that they had been deceived. Sureties are supposed to know the character of their principal, and to be willing to be bound for his fidelity. They must inquire and inform themselves of all the facts they desire to know, and if they omit to seek for or obtain the requisite information, they cannot easily avoid the bond upon inferential or unsatisfactory proof that they were drawn into signing it by bad faith on the

part of the obligee. Before a bond in such a case can be avoided, the fraud and bad faith should be brought home to the obligee by quite clear and decisive evidence, otherwise bonds of this character will furnish a very precarious security to the parties who take them. In *Tapley* v. *Martin* (116 Mass. 275), it was said : " The object of the bond is to guarantee to the bank the faithful performance by the cashier of his duties. His duties and obligations are not affected by the negligence of the officers or agents of the bank, and such negligence does not discharge the sureties ; " and it was held that the surety upon the bond of the cashier of a National bank is not discharged by the fact that the cashier had, before the bond was given, committed frauds upon the bank, if such frauds were unknown to the officers of the bank, although they were guilty of gross negligence in not discovering them. In *Atlantic and Pacific Telegraph Co.* v. *Barnes* (64 N. Y. 385 ; 21 Am. Rep. 621), it was held that " the sureties upon a bond given by an employee to his employer, conditioned that the former will faithfully account for all moneys and property of the latter coming into his hands, are not discharged from subsequent liability by an omission on the part of the employer to notify them of a default on the part of their principal, known to the employer, and a continuance of the employment after such default, in the absence of evidence of fraud and dishonesty on the part of the employee." In *B'd of Supervisors* v. *Otis* (62 N. Y. 88), it was held, that " mere *laches* on the part of an obligee or creditor, or non-performance of some act which might prevent loss to a surety, will not, in the absence of some express covenant or condition, discharge the surety. To be available to him as a defense, the neglect must be some positive duty owing to him." In *Atlas Bank* v. *Brownell* (9 R. I. 168 ; 11 Am. Rep. 231), an action on a cashier's bond, it was held, that to avoid a bond on the ground of fraud on the part of the bank, or its directors, there must be a fraudulent concealment of something material for the surety to know. A concealment which will avoid a guaranty must be a fraudulent one. If not fraudulent in fact or

in law the defense is not made out; and in Story's Equity Jurisprudence (§ 204), it is said that " the concealment to make void a contract must amount to the suppression of facts which one party is bound in conscience and duty to disclose to the other, and in respect to which he cannot innocently be silent." It is perceived from these authorities that the law simply requires from the obligee to sureties upon a bond good faith. He must not intentionally mislead them by what he says or does, or omits to say or do, and bad faith only on his part, which has misled the surety to his damage, will enable the surety to defend against the bond.

In this case, the claim is that the cashier who preceded Bartow had for some years been a defaulter to the bank, and that Bartow, as teller, aided in concealing and covering up the defalcation for years. The answer to this is that it does not appear, and was not found by the referee, that in any thing Bartow did in reference to the accounts and transactions of the former cashier he acted dishonestly or fraudulently, or that he knew the bank was to suffer any wrong or injury from the cashier's conduct. There was nothing in what Bartow did as a subordinate of the cashier, in reference to the cashier's accounts and transactions with the bank, showing that he was intentionally dishonest or unfaithful to the trust reposed in him by the bank; and such evidently was the view of the facts taken by the directors when, with full knowledge of all the facts, they appointed him cashier. Upon such facts it is quite clear that the sureties upon the bond are unable, within any authority that can be found, to avoid the bond on the ground of fraud.

Neither was there any thing in the condition of the bank growing out of the supposed defalcation of the former cashier which the directors were bound to communicate to the sureties. It was not certainly known at the time Bartow was appointed cashier, so far as we can learn from the evidence, that the bank would lose any thing on account of the transactions of the former cashier with the bank; and it subsequently turned out that if it lost any thing, the loss was not large. It

was not of the least importance that the sureties should have
any knowledge in reference to the accounts of the former
cashier as the state of his accounts with the bank in no way
increased, affected or related to the liability which they assumed
by their bond.

*Fourth.* On the 31st of October, 1873, Beverly Haight, one
of the sureties, addressed a letter to White, one of the directors
and vice-president of the bank, of which the following is a
copy : " I wish no longer to be bondsman for Mr. Bartow.   I
am old and my health is poor.   I notified Mr. Bartow last
February that I did not wish to be bondsman any longer."
White produced this letter at the next meeting of the board
of directors held soon after its date, and it was read to the
directors; but they took no action thereon.   The claim is
made, that by that notice Haight was discharged from his
liability as surety upon the bond for the defaults thereafter
committed by Bartow, and so the referee held as matter of law;
but he further held that the notice contained in that letter did
not discharge the defendant's testator or the defendant, as his
legal representative, from liability for all of Bartow's defaults.
It is not now important to determine whether the referee was
right or not in his conclusions of law as to the effect of Haight's
notice and discharge, because his findings show that prior to
this notice, Bartow's default was more than $30,000; and hence
this recovery can be upheld without, in this action, charging
the defendant with any defaults, or breaches of the bond, com-
mitted by Bartow, after the 8th day of November, 1873, when
the notice was communicated to the board of directors.   What-
ever the effect of such a notice may be it cannot operate instan-
taneously.   The directors, after receiving it, must have a reason-
able time to act, to give notice to the cashier and the other
sureties, and to procure a new bond.   If the effect of the
notice is to be such as is now claimed on the part of the appel-
lant, that is, if it discharged Haight, and in consequence thereof
discharged all the other sureties, the instant it was communi-
cated to the bank, it might be quite embarrassing and damag-
ing to the bank.   The cashier might be so situated that the

directors could not immediately arrest his discharge of duty or his ability to bind the bank ; and hence reasonable time, at least, must be given to the bank in such a case to act after receiving the notice. It abundantly appears that before the close of November, 1873, the default which the referee found the cashier had committed amounted to more than $30,000. It is unnecessary for us to go minutely into the evidence for the purpose of showing that the findings of the referee were sanctioned by the evidence.

*Fifth.* We have carefully examined the claim made on the part of the defendant, that his testator was released from liability upon the bond on the ground of misconduct and embezzlement on the part of Bartow in 1874, which then became known to the directors of the bank, and was then concealed from the defendant's testator and the other sureties upon the bond. This claim is based upon a transaction by which Bartow took $60,000 of the bonds of the Fishkill Savings Institute, of which he was an officer and pledged them as security for an overdraft of the National Bank of Fishkill with the Merchants' Exchange National Bank of New York. But it does not appear, and was not found by the referee, that the directors of the Fishkill National Bank had any knowledge that the transaction of Bartow in reference to these bonds was fraudulent or dishonest. They may well have supposed from the facts within their knowledge that the Fishkill National Bank had advanced to the Savings Institute large sums of money, for which the institute was indebted to the bank, and that these bonds were taken and pledged for the purpose of reimbursing the bank for the moneys thus advanced. The defendant should have some finding of knowledge on the part of the directors which they were bound in good faith and conscience to communicate to the sureties. There is no such finding, and there are no such facts upon which an imputation of bad faith on the part of the directors, in reference to that transaction, can be imputed to the bank. If the directors were guilty of any negligence in not learning or knowing of the misconduct of Bartow at that time, then the

defendant's testator, as one of the directors, was equally guilty with the others.

Without a more extended or minute discussion of the facts of this case it is sufficient further to say, that we have carefully considered all the evidence and all the allegations of error, and we are of opinion that the decision of the referee was justified by the law and the facts.

The judgment should be affirmed.

All concur.

Judgment affirmed.