Vaít Wycic, J.
On July 28, 1870, the “Brooklyn, Winfield and Newtown Railway Co.” (for the sake of brevity, hereinafter designated the Winfield Co.), party of the first part, and John Elwell and William W. Green as trustees of the purchasers of the Metropolitan Railway Go., parties of the second part, entered into a contract under seal, whereby it was agreed that the party of' the first part would lease for 95 years its franchise, right of way, etc., to the said parties of the second part and the said parties of the second part agreed to organize under the, general railway law of this State, a company to be called “ The North Second Street and Middle Yillage Railway Co.” for the sake of brevity hereinafter designated the North Second Street Co.), with a capital stock of $150,000, and to pay the Winfield Co., for such lease $30,000 of said stock to be issued in the name of Cheesborough, treasurer of Winfield Co.; and Elwell and Green further agreed that in case the North Second Street Co. (to be formed) shall at any time during the 95 years, issue mortgage bonds on its property, that then and in such case, the holders of said $30,000 of stock or any portion thereof shall have the right to exchange the amount of stock so held by them for a like amount of such bonds so issued.
Elwell and Green organized the North Second Street Co. with a capital stock of $150,000, and the Winfield Co. executed a lease for 95 years of its franchise to said North Second Street Co., and received from the latter company $30,000 of its stock in the *867 name of Cheesborougli, treasurer of Winfield Co., in payment for such lease.
In May, 1875, the North Second Street Co., issued $125,000 of mortgage- bonds on its road. In Sept., 1884, the plaintiff became the holder of $2,000 of the $80,000 of the capital stock of the North Second Street Co., issued to the Winfield Co., in payment for the lease, though in the meantime the stock had become almost worthless, the road then being in the hands of a receiver appointed in an action to foreclose these mortgage bonds. In which action a decree of foreclosure was entered about the same time and soon thereafter the road was sold thereunder.
On Sept. 25, 1884, a few days after plaintiff became the holder of such stock and over nine years after the bonds were issued by the North Second Street Co., he tendered to Green (Elwell having died prior thereto), his stock, and demanded a like amount of bonds, which was refused.
June 1,1885, plaintiff commenced this action against Green to recover the value of the bonds which Green had refused to give in exchange for the stock.
The court gave plaintiff judgment for the value of the bonds and from this judgment defendant appeals.
There were several defenses set up by the defendant, but the one that we will now consider was, that the agreement of July 28,1870, between the Winfield Co., and Elwell and Green, gave to the holder of plaintiff’s stock the option to exchange the same for bonds of the North Second Street Co. in May, 1875, the time the bonds were issued by that company; and that the holder of this stock had failed to elect to exchange it for bonds within a reasonable time by waiting over nine years after the right of election attached. That the holder of this stock was chargeable with gross laches and had thereby waived and abandoned his right of election to exchange stock for bonds.
• The trial court decided that there were no laches on the part of plaintiff because, “ The defendant should have given to the party in whose name the certificate (stock) was issued in absence of knowledge of defendant of the transfer to plaintiff that the bonds were ready and that he should make his election in a reasonable time after the service of the notice. If he had given such notice, the party who held the certificate would have been bound to make an election before the expiration of the time fixed. In this case no notice was given, and I think, therefore, that no laches to the injury of the defendant has been proven.”
Does this correctly state the rule as to the time within which an option must be exercised after the happening of the contingency upon which it is conditioned ?
This rule would give one, clothed with a right of option not *868 limited as to time by the terms of the agreement, an unlimited, time within which to mate an election thereunder unless the other party gave a notice that the election must be made within a reasonable time. Does not the law require it to be done within a reasonable time without any such notice ?
The learned trial judge cites to sustain the position he assumed, Howe Machine Co. v. Farrington, 82 N. Y. 121; Newcome v. Hale, 90 N. Y., 327. These cases decide that “ in order to exonerate a surety, because of delay in proceedings, against the principal, the surety, must show explicit notice or request to the creditor to collect the debt or enforce the liability,” but do not touch on the question of what time one is allowed to exercise an option. In Fitzpatrick v. Woodruff, 96 N. Y., 565, the court says “ It is undoubtedly the rule, as is claimed by appellant, that where an option is to be exercised or a condition to be performed is not limited by the agreement, then such option must be acted upon and the condition performed or abandoned within a reasonable time.
The court says that a delay of three years in the exercise of an option was unreasonable, but that the acts of defendant had excused the laches of plaintiff. Wooster v. Sage, 67 N. Y., 72, Johnston v. Trask, 40 Hun, 417. The English rule is the same Vyse v. Wakefield, 6 Meeson & Welsby, 442. Same case affirmed,. 7 M. & W., 126. Payne v. Ives, 3 Dowling & Ryland, 664. It would seem that the trial judge imposed oar the defendant the duty of giving to plaintiff a notice that the law does not devolve upon him. For this reason we think the judgment must be reversed and new trial ordered, with costs to abide the event.
REYNOLDS, J. concurs.