MOHASCO INDUSTRIES, INC., Plaintiff,

v.

GIFFEN INDUSTRIES, INC., Defendant.

No. 70 Civ. 5738.

United States District Court,
S. D. New York.

Dec. 30, 1971.

Sullivan & Cromwell, New York City, for plaintiff; Michael A. Cooper, New York City, of counsel.

Golenbock & Barell, New York City, for defendant; Arthur M. Handler, New York City, of counsel.

## OPINION

FREDERICK vanPELT BRYAN, District Judge:

Plaintiff, Mohasco Industries, Inc. (Mohasco) sues on a written guaranty executed by defendant, Giffen Industries, Inc. (Giffen). Giffen guaranteed payment of amounts due and owing to Mohasco by Murray B. Marsh Company (Marsh) for goods sold and delivered. Mohasco is a New York corporation. Giffen is a Florida corporation with its principal place of business in Florida. Marsh is a Washington corporation with its principal place of business in California, and at the time the guaranty was executed was a wholly-owned subsidiary of Giffen.

Mohasco commenced the action in the Supreme Court, New York County, on December 10, 1970, by obtaining an order of attachment and the next day attaching property of Giffen in the hands of garnishees. By stipulation of the parties, a cash collateral account of Giffen with a balance of $1,390,000 was substituted for the property attached, since replaced by a certificate of deposit. Giffen then removed the action to this court on grounds of diversity of citizenship and Mohasco moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P.

On November 20, 1970, Marsh had commenced an action against Mohasco in the United States District Court for the Central District of California, seeking damages of $75,000,000 for alleged antitrust violations. On December 14, 1970, subsequent to the commencement of the instant action in New York, an amended complaint was served in the California action naming Giffen as an additional party plaintiff and asserting a claim for relief by Giffen against Mohasco for judgment declaring the Giffen guaranty of Marsh's obligation to Mohasco invalid and unenforceable on the ground that the guaranty was an instrumentality used by Mohasco to violate the antitrust laws. When Mohasco moved for summary judgment in this Court, Giffen moved to stay the instant action pending determination of the California action. Thereafter, Giffen's claim for relief against Mohasco in the California action was dismissed by the District Court in California, primarily on the ground of the pendency of the instant action in this district. Giffen's motion before this Court for a stay was thereupon denied and the Mohasco summary judgment motion is before the Court for determination.

Mohasco is a manufacturer of carpet products distributed in various states under the trade name Mohawk. For many years prior to the fall of 1970, Mohasco sold Mohawk carpet products on open account to Marsh, a west coast wholesale distributor. The arrangement with Marsh was on an informal basis and was terminable by either party, at any time.

In March, 1969, Marsh was acquired by Giffen. On July 21, 1969 Mohasco wrote to Giffen stating that if "the financial structure of your Marsh subsidiary has been altered to conform with general overall corporate practices of pooling subsidiary resources into home office coffers, so that maximum use of finances can be employed," Mohasco wished Giffen to guarantee Marsh's purchases from Mohasco. It enclosed its "usual guaranty document" for execution by Giffen. On August 29, 1969, Giffen returned the guaranty which it had executed, dated July 31, 1969, to Mohasco, enclosing a copy of resolutions of the Giffen board of directors authorizing the execution of guaranties requested by suppliers of its subsidiaries.

Under the guaranty so executed, Giffen unconditionally guaranteed that Marsh would fully and promptly pay to Mohasco, when due, all amounts arising from any advance, loan or extension of credit made or to be made by Mohasco to Marsh, including amounts owing on open account transactions for the sale of carpet products by Mohasco to Marsh. Mohasco thereafter continued to extend large credits to Marsh for sales of carpet prod-

ucts on open account, until the fall of 1970. A dispute then arose between Marsh and Mohasco. Marsh ceased acting as a Mohawk distributor and then commenced the California action against Mohasco previously referred to. Marsh failed to make any further payments to Mohasco for goods sold on open account after October 26, 1970, and on November 27, 1970, advised Mohasco by telegram that any amounts due for goods theretofore delivered would be withheld pending the outcome of the California litigation.

By letter dated December 7, 1970, Mohasco advised Giffen that Marsh had failed to make payment of amounts due and demanded immediate payment by Giffen of $904,723 then due from Marsh on open account, and payment promptly after January 5, 1971, of $587,727 owed by Marsh to Mohasco on open account transactions which would become due and payable on that day. Mohasco has received no payments on the Marsh indebtedness since then.

On December 10, 1970, Mohasco commenced this action alleging extension of credit to Marsh in reliance upon the Giffen guaranty; Marsh's refusal to pay amounts due and owing on open account and Giffen's resulting obligation to make such payments pursuant to the guaranty.

Giffen's answer admitted the execution of the guaranty but denied (1) that the amounts claimed were due and owing from Marsh, and (2) that it was liable under the guaranty. As a separate defense, Giffen alleged that it had been induced to enter into the guaranty by Mohasco's fraudulent failure to disclose that Mohasco then intended to terminate or was contemplating terminating the Marsh distributorship and had led Giffen to believe that it would continue Marsh as a distributor as long as Marsh continued to distribute Mohasco products.

The following material facts have been firmly established on the record before me, and there are no genuine issues with respect thereto:

1. Giffen executed the guaranty of the obligations of its wholly owned subsidiary, Marsh, to Mohasco on August 29, 1969 dated July 31, 1969.

2. Mohasco sold carpet products to Marsh during 1970 on open account.

3. Under the terms of the guaranty, Giffen guaranteed that Marsh would punctually pay for goods sold and delivered to it by Mohasco.

4. There were accounts stated between Mohasco and Marsh as of October 30, November 10, and November 30, 1970, and the balance unpaid thereon is in the amount claimed by Mohasco.

5. Marsh has failed and refused to pay any part of the unpaid balance.

6. Mohasco has demanded payment from Giffen under its guaranty and no payment has been made.

Giffen contends, however, that Mohasco's motion for summary judgment should be denied. Its first contention is that there are factual issues as to whether Giffen was fraudulently induced by Mohasco to enter into the guaranty and thus as to whether the guaranty is enforceable.

Giffen claims that it executed the guaranty because it was induced to believe that Mohasco would continue Marsh as its western distributor into the indefinite future as long as Marsh refrained from distributing competing carpet products. Giffen further claims that at the time it executed the guaranty Mohasco intended or was contemplating the termination of the Marsh distributorship, which Mohasco effected a year and a half later, in the fall of 1970, and concealed this from Giffen.

There are no facts stated in the papers before me to support Giffen's defense of fraud in the inducement. All that can be found on that subject are gratuitous suppositions, speculations and conclusions on Giffen's part. At the time it entered into the guaranty, Giffen was fully aware of the informal arrangements between Mohasco and its subsidiary, Marsh. In essence, this was merely a vendor-vendee relationship, which either party could

cancel at any time without notice, and Giffen well knew this.

Giffen has not shown any basis for its claim that there was an implied promise by Mohasco that it would continue to distribute its west coast products through Marsh indefinitely or, indeed, for any period. The "promise" is said to be implicit in a comment by Mohasco's president to Giffin's chief officer to the effect that "a Mohawk distributor could only distribute Mohawk products." This comment was made in response to a suggestion by Giffen that Marsh might handle Giffin's Vantage carpet line and occurred some considerable time before Mohasco requested that Giffin guarantee the Marsh account.

Mohasco says that the meeting at which this conversation is alleged to have taken place was in January, 1969, before Giffen acquired Marsh, while Giffen says it was in July, 1969. Even assuming that Giffen's version is correct, no such promise, implied or otherwise, could possibly be found from the statement relied on or from the circumstances. On this record, the "implied promise" which Giffen attempts to rely on, simply does not exist as a matter of law.

Giffen goes on to claim that Mohasco, at the time it requested the guaranty, "must have contemplated" or decided to terminate the Marsh dealership and that the failure of Mohasco to disclose this vitiates the guaranty. This contention, too, flatly denied by Mohasco, is mere supposition and without any factual support in the record.

It is clear that Mohasco's distributorship arrangement with Marsh was not terminated until the fall of 1970, more than a year after Mohasco requested the guaranty, and Mohasco continued to extend credit to Marsh until November 19, 1970. The precise circumstances under which the termination took place are in dispute but there is no question but that the subject of possible termination was not even raised by Mohasco until August, 1970, at the earliest. Whether or not, as Giffen claims, the termination was finally made by Mohasco or, as Mohasco claims, was made by Marsh, is of little consequence. The termination under the circumstances, standing by itself, is not evidence that Mohasco, as Giffen, puts it, "contemplated" termination well over a year earlier. Neither Giffen's unsubstantiated speculations that this was part of a plan by Mohasco to dominate the carpet industry nor its reference to a handwritten notation on a Mohasco office memorandum of October 2, 1968 expressing doubt as to whether Mohasco would be interested in having Giffen handle the Mohawk line adds anything of evidentiary value to its claim.

But even if there were any evidence indicating that Mohasco, to use another of Giffen's words, "probably" had the intention to terminate the Marsh distributorship at the time the guaranty was executed, this would be wholly insufficient to sustain Giffen's defense of fraud in the inducement.

■■ Under New York law which applies here,[1] it is true that there are circumstances under which the silence of an obligee under a suretyship contract as to a material fact may constitute a fraud upon the surety and relieve him of liability. Bostwick v. Van Voorhis, 91 N.Y. 353 (1883); Howe Machine Co. v. Farrington, 82 N.Y. 121, 125 (1880); Loos v. McCormack, 107 App.Div. 8, 46 Misc. 144, 93 N.Y.S. 1088, affirmed, 107 App.Div. 8, 95 N.Y.S. 1141 (1905). Cf. General Crushed Stone Co. v. New York, 46 Misc.2d 266, 259 N.Y.S.2d 757 (Sup. Ct. 1963), modified, 23 A.D.2d 250, 260 N.Y.S.2d 32 (App.Div.1965), reversed, 19 N.Y.2d 737, 279 N.Y.S.2d 190, 225 N. E.2d 893 (1967); Atlantic Bank of New York v. Carnegie Hall Corp., 25 A.D.2d 301, 268 N.Y.S.2d 941 (App.Div.1966). But the mere characterization of silence on the part of the obligee as "fraudulent" does not suffice unless it is shown that there was some duty on the part of

1. The Guaranty provides that "This Guaranty and all rights thereunder shall be governed by the laws of the State of New York."

the obligee to speak—a duty to disclose a material fact of "so decisive a character that it could not be supposed that if known to the surety he would have entered into the obligation." Howe Machine Co. v. Farrington, supra [82 N.Y. 121, 125]. The failure of an employer to disclose to a surety that an employee whom the surety was bonding had previously been guilty of dishonesty, for example, would amount to a fraudulent concealment and would void the contract of suretyship. Bostwick v. Van Voorhis, *supra*; Howe Machine Co. v. Farrington, *supra*.

■ In order to constitute fraud, however, silence on the part of the obligee must be tantamount to affirmation of a state of affairs which does not exist and which would have the effect of deceiving or defrauding the surety. The obligee is not under an obligation to disclose to a surety information of which the surety has knowledge readily to hand. A surety cannot "rest supinely, close his eyes, and fail to seek important information" and then seek to avoid liability under the guaranty by claiming he was not supplied with such information. Magee v. Manhattan Life Insurance Co., 92 U.S. 93, 23 L.Ed. 699 (1875). Moreover, as stated in Bostwick v. Van Voorhis, *supra:*

> ". . . [T]hey [sureties] must inquire and inform themselves of all the facts they desire to know, and if they omit to seek for or obtain the requisite information, they cannot easily avoid the bond upon inferential or unsatisfactory proof that they were drawn into signing it by bad faith on the part of the obligee. Before a bond in such a case can be avoided, the fraud and bad faith should be brought home to the obligee by quite clear and decisive evidence, otherwise bonds of this character will furnish a very precarious security to the parties who take them." (91 N.Y. at 360–361)

■ In the case at bar, there was no duty on the part of Mohasco to disclose to Giffen that it was "contemplating" or would "probably" phase out Marsh's distributorship, were that shown to have been the fact. As has been pointed out, Giffen was fully aware of the informal vendor-vendee arrangement between its then subsidiary, Marsh, and Mohasco. It knew that either had the right to terminate the relationship at any time without cause.

Under the express terms of the guaranty, Giffen agreed "that Mohasco may deal with Marsh, and any other guarantors, all in such manner as Mohasco may determine and without in any way affecting the liability hereunder" of Giffen. If Giffen desired a different arrangement or a commitment on Mohasco's part to continue its relationship as a condition of the guaranty, it was up to Giffen to request such a condition. There was no duty on Mohasco to inform Giffen that it was contemplating the exercise of its legal rights under the Marsh arrangement, if that were the fact.

First Citizens Bank and Trust Co. of Utica v. Sherman, 250 App.Div. 339, 294 N.Y.S. 131 (4th Dep't 1937), on which Giffen relies, does not support its position. Instead, the Sherman case illustrates the difference between a case where the obligee has a duty to disclose information in its possession to the surety and the case at bar, where Mohasco had no duty to disclose the information Giffen claims was withheld. In *Sherman,* the instrument of guarantee on which the plaintiff bank sued listed the collateral purported to be held by the bank as security for the debt guaranteed. In fact, the Bank had already released a substantial portion of the collateral before the guaranty was executed. The Court found that the guarantor was induced to give the guaranty in the belief that the collateral listed in the guaranty was held by the bank and had it been so held the guarantor's liability would have been relatively nominal. Under these circumstances, the Court held that the failure of the bank to inform the guarantor of the fact that it had released the securities listed was a fraud on the guar-

antor which relieved him from liability under its guaranty.

In the case at bar, on the other hand, there was no representation by Mohasco that it would continue dealings with Marsh or that it would not terminate the Marsh relationship as it had a legal right to do. Giffen, fully familiar with the terms of the arrangement, had no basis for relying on its continuation by Mohasco. There was, thus, no duty on Mohasco to disclose that it was contemplating termination, if, indeed, that were the case.

Giffen has failed to show that there are any genuine issues of material fact with respect to its defense of fraud in the inducement. There is nothing in the record indicating that such defense is in any way sustainable in law or in fact.

Finally, Giffen contends that it cannot be held liable under the guaranty until Marsh's antitrust claim against Mohasco, asserted in the California action, has been determined. There is no merit to this contention.

 Marsh has admitted that the amounts claimed by Mohasco for goods sold and delivered are due and owing. Marsh's liability to make payment of such amounts is completely independent of its antitrust claims against Mohasco alleged in California. Kelly v. Kosuga, 358 U. S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959); Bruce's Juices, Inc. v. American Can Co., 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219 (1957). The California District Court so stated in dismissing Giffen's claims against Mohasco there.

It is well settled in New York "that a guarantor when sued alone by the creditor, cannot avail himself of an independent cause of action existing in favor of his principal as a defense or counterclaim." Walcutt v. Clevite Corp., 13 N.Y. 2d 48, 55, 241 N.Y.S.2d 834, 838, 191 N.E. 2d 894, 897 (1963); Ettlinger v. National Surety Co., 221 N.Y. 467, 117 N.E. 945 (1917).

The guaranty expressly provided that the liability of Giffen "shall extend to all obligations of Marsh, to Mohasco, notwithstanding any right or power of Marsh or anyone else to assert any claim or defense as to the invalidity or unenforceability of any such obligation" and that Giffen "waives any and all defenses which may be available to it as Guarantor and all defenses in the nature thereof."

Giffen has failed in a determined attempt to obfuscate the rather simple issues in this case. There is no substantiation of its claim that further discovery would be at all likely to produce evidence to support its defenses. In this case further discovery could serve no useful purpose.

Mohasco has established that it sold and delivered goods to Marsh on open account for which it has not been paid and Giffen is thus liable under its guaranty for the amounts so due and owing. There are no genuine issues of material fact to be tried and Mohasco's motion for summary judgment is granted.

Settle judgment on ten days' notice.

It is so ordered.