## FOX vs. PARKER and CUTLER.

The defendants agreed with the plaintiff that P. should account to him for the proceeds of all paper sold and delivered to him by the plaintiff within one year, to be sold on commission, and that they would be liable to the extent of a balance of $1000. No time was specified, within which P. was to pay over the moneys. P. from time to time gave the plaintiff his notes, for different amounts, without reference to the quantity of paper furnished, or to any precise balance due, or to any settlement made, or to be made, between the plaintiff and him, but they were in the nature of advances upon the paper consigned, and were given in conformity with a usage of the trade, and without any specific agreement that the time should be extended. *Held* that the giving of the notes did not operate to stay the collection of the proceeds of the sales when due, but that they were merely collateral, and did not suspend the plaintiff's right of action on the original debt; and that there was no extension of the time of credit, so as to discharge the defendants as sureties.

*Held* also that evidence of a *usage* or *custom* existing among men engaged in the business of selling paper on commission, to give notes to the manufacturer, before the paper is sold, to enable him to raise money thereon in anticipation of the sales, was proper; and that it was not liable to the objection that the effect of it was to vary the terms of the written contract. That it went to explain and ascertain the intention of the parties in relation to a matter upon which the contract was silent.

APPEAL from a judgment in favor of the plaintiff, rendered upon the report of a referee. The action was upon a guaranty made by the defendants to the plaintiff, on the 8th of February, 1861, by which they agreed to be liable in a sum not exceeding $1000 that one E. M. Parker, of the city of New York, should account to the plaintiff for the proceeds of paper sent him by the plaintiff, within one year, to be sold on commission. The plaintiff claimed to recover a balance of over $900, alleged to be due from E. M. Parker to him, on account of paper sold, and the defendants to be discharged from liability, for the reason that. from time to time the plaintiff had taken notes of E. M. Parker, on account of the business ; and it was claimed that by doing so, time had been given to the principal debtor, and that the defendants, being sureties, were discharged. The facts proven, so far as material, and the questions raised, sufficiently appear in the opinion of the court. The referee reported in favor of the plaintiff for $1039.07, for which sum, and costs, judgment was entered. The defendants appealed to the general term.

*H. Smith,* for the appellants.

*J. H. Reynolds,* for the respondent.

*By the Court,* MILLER, J. By the terms of the contract upon which this action is brought, the defendants agreed that one E. M. Parker should well and faithfully account to the plaintiff for the proceeds of all paper sold and delivered to him by the plaintiff within one year, to be sold on commis-

sion, and that they would be liable to the extent of a balance of one thousand dollars. No time was agreed upon, within which Parker was to pay over the moneys, and the evidence shows that notes were given by Parker, at various times, and for different amounts, without reference to the quantity of paper furnished, or to any precise balance due, or to any settlement made or to be made between the plaintiff and Parker. It appears from the evidence that these notes were given for the purpose of enabling the plaintiff to raise money, without any particular regard to the paper being in fact sold by Parker, or the proceeds of the sale or sales collected. They were somewhat in the nature of advances made upon the paper consigned, some of which had not arrived, and some portion of which had not been disposed of and the money realized. The notes, in fact, or some of them, embraced a portion of the avails of paper sold, and a portion which had not been realized at that time, and would appear to have been executed in conformity with a custom existing among men engaged in that kind of business, to give notes to the manufacturer before the paper was sold, payable at such times as would enable him realize from the sales. This arrangement would seem to be a part of the condition upon which the paper was sold, and was according to the well known usages of the trade. While it did not give any particular time of credit, to the consignee, it was the ordinary course of trade or usage in that particular business, which furnishes some light by which we may be able to arrive at a satisfactory conclusion, for the purpose of determining the nature of the liability incurred, and the contract which the parties intended to make.

Upon the facts presented, the question arises whether there was any extension of the time of payment of any sum due from the consignee to the plaintiff; or whether the notes were taken by way of an advance upon the paper consigned, and were at most collateral to the obligation of Parker to account

for the proceeds of the paper sold, when the proceeds were realized.

The rule is well settled that when, by a valid and binding agreement between the creditor and the principal debtor, without the consent of the surety, time is given to the debtor, which ties up the hands of the creditor, though it be for only a single day, the surety is discharged. The creditor must be in such a situation that when the surety comes to be substituted in his place by paying the debt, he may have an immediate right of action against his principal. (*Bangs* v. *Strong,* 7 *Hill,* 250. *Gahn* v. *Niemcewicz,* 11 *Wend.* 312. *Colemard* v. *Lamb,* 15 *id.* 329. *Miller* v. *McCan,* 7 *Paige,* 451.) When however a note is received as collateral security to one which is over due, the right of immediate action on the note over due is not suspended, and the surety is not discharged. (*Taylor* v. *Allen,* 36 *Barb.* 294. 39 *id.* 610.)

If the plaintiff's demand was due, and he was prevented from bringing a suit upon it in consequence of the notes given to him by his consignee, the time of payment was extended. This is the point to be determined; and in disposing of the question it is important to understand the precise position which the plaintiff and Parker occupied towards each other. According to the testimony in the case, it does not appear that there had been any settlement, between the plaintiff and Parker, of their accounts, in which any balance was struck and any amount conceded to be due from Parker to the plaintiff. There was no specific agreement that the time should be extended. In truth some of the notes were given before the paper had reached its destination, and were for more than had actually been forwarded. It can not be urged then, I think, that there was an agreement to extend the time, in face of the fact quite apparent from the transaction itself, independent of the evidence as to the usage among those engaged in the paper business, that it was merely a matter of convenience, without any intention to fix any specific time for the payment of the avails of the

sales. If under these circumstances the plaintiff had prosecuted Parker on account of the moneys received by him, I think it would not have been a legitimate defense that these notes were intended as a payment of the debt. No receipt was taken from the plaintiff, on account of the notes and as a payment, and neither party appeared to understand that they were to be so regarded, or were to have any such effect. It is quite obvious that the notes did not operate to stay the collection of the proceeds of the sales when due; and if they did not, but were merely collateral, as would appear to have been the intention, then they did not suspend the plaintiff's right of action on the original debt, and there was no extension of the time of credit.

I entertain this view of the question independent of the testimony introduced upon the trial, as to the usage in such cases, and assuming that such evidence, for the purpose of the argument, is not in the case. I think that this is the natural inference to be drawn from the facts of the case and the general course of business of that character, of which we have a right to take judicial notice. In a case like this, where notes are drawn without a settlement; with no balance struck; no agreement between the parties that they are in payment, or that the time of payment is to be extended; it would be closing our eyes to all the legitimate inferences arising from a conceded and recognized state of facts, to claim that they were given in payment, or were any thing more than what the facts and circumstances prove them to have been—merely collateral to the original indebtedness, and made for the purpose of realizing advances on the articles forwarded.

But if there is any good ground to dispute the correctness of the doctrine I have discussed, I think the proof which was introduced, on that subject entirely disposes of the question. There was sufficient evidence to establish that a custom existed to make such notes in the form in which

Fox *v.* Parker.

those given were made, for the purpose of realizing from the sales, in advance.

It is sometimes proper to prove *usage*, to interpret the otherwise indeterminate intentions of parties, and to ascertain the nature and extent of their contracts arising not from express stipulation, but from mere implications and presumptions, and acts of a doubtful character. It is not necessary that it should have existed immemorially, and it is sufficient if it be established, known, certain, uniform, reasonable, and not contrary to law. (2 *Greenl. Ev.* § 251. *See also Dawson* v. *Gale,* 4 *Hill,* 107; *Cowen & Hill's Notes to Phil. Ev.* 1408–1420.) The testimony of a single witness is sufficient to establish a commercial usage, if his means of knowledge are abundant, and his testimony full and satisfactory. (*Vail* v. *Rice,* 1 *Seld.* 155.)

It is urged that the testimony as to usage was inadmissible because the terms of the contract are clear and explicit, and evidence of a usage or custom is not admissible to vary the written instrument, or to give it a different meaning from that expressed. (*Wadsworth* v. *Allcott,* 6 *N. Y. Rep.* 64. *Wheeler* v. *Newbold,* 16 *id.* 392. *Vail* v. *Rice,* 5 *id* 155.)

The doctrine upheld by the authorities cited is unquestionably a sound one; but I think is not entirely applicable to the case under consideration. It was not proposed by the testimony to vary the terms of the contract, but when the precise terms were agreed upon, the evidence was introduced to establish in what manner such kind of business was done. It went to explain and ascertain the intention of the parties in relation to a matter upon which the contract was silent. (*Hinton* v. *Locke,* 5 *Hill,* 437.)

It was never intended that the paper should be paid for in advance, and in proving the manner in which such business was transacted, the true meaning of the parties was made to appear. This was clearly proper, within well settled rules of law, although, as I have before intimated, the testimony could

not be important in disposing of the main question involved in this case.

I think the testimony of the plaintiff, in reference to the state of accounts between himself and Parker was competent. Although it necessarily introduced conversations between the plaintiff and Parker, yet it related to transactions between them, and was a part and portion of those transactions, and as such a part of the *res gestœ*. The plaintiff's action was based upon the failure of Parker to pay, and it was competent to show in what condition the affairs between him and Parker stood, even if it drew out, incidentally, the conversations between them.

Nor was any demand necessary, before the action was brought against the defendants.

As no error was committed, the judgment entered upon the referee's report must be affirmed, with costs.

[ALBANY GENERAL TERM, March 6, 1865. *Peckham, Miller* and *Ingalls,* Justices.]