THE AMERICAN LEAD PENCIL COMPANY, APPELLANT, VS. F. A. WOLFE & CO., APPELLEES.

1. The mere recital in a motion of matters *in pais* does not furnish evidence that the matters so recited are true.

2. Under the statute it is made the duty of the trial court to allow upon due application amendments of all defects and errors in proceedings in civil causes, upon such terms as the court deems proper, that may be necessary for the purpose of determining in an existing suit the real question in controversy between the parties.

3. A promise by an agent of the vendee of cedar logs to be thereafter delivered, to pay over the purchase money therefor, with the consent of the vendors, to third parties who were to furnish goods to such vendors, conceding that said agent had authority to make such a promise, is not a transaction within the statute of frauds, and required to be in writing.

4. Where an agency is created to accomplish a certain purpose and the agent acts within the general scope of his authority in effecting such purpose, his acts will bind his principal so far as.

JUNE TERM, 1892.    361

American Lead Pencil Co. v. F. A. Wolfe & Co.—Statement of Case.

third persons dealing with him in good faith are concerned; but a principal may confer as much or as little authority as he sees fit upon his agent, and he may also impose such lawful restrictions and limitations upon his agent as he may deem proper, and such restrictions and limitations will be as binding upon third persons who had notice of them, as upon the agent himself, provided the principal does nothing to waive them.

5. Custom or local usage can not be shown to change the instrinsic character of the relation of an agency, nor can they be relied upon by third parties to contravene the express instructions or the powers given to an agent of which they had due notice.

Appeal from the Circuit Court for Levy county.

STATEMENT.

Frederick A. Wolfe and Benjamin W. Mayson, partners doing business in the firm name of F. A. Wolfe & Co., appellees in this court, sued the American Lead Pencil Company, a corporation organized under the laws of the State of New Jersey, in the Circuit Court of the Fifth Judicial Circuit, for Levy county. The declaration filed in the case contains three counts. In the first it is alleged in substance as follows: In consideration that the plaintiffs, at the instance and request of defendant, would sell and deliver to the firm of Dees & Barton on a credit, such goods and merchandise as they should have occasion for and require from time to time to enable them to carry on their business of cedar log getters, the defendant to subserve a business purpose of its own, being a cedar log buyer, and the said Dees & Barton having promised to sell and place in the hands of defendant sufficient cedar logs to pay such debt, under-

took and faithfully promised plaintiffs to pay them for whatever goods and merchandise they should sell and deliver to said firm of Dees & Barton; that confiding in said promise of defendant, plaintiffs in July, A. D. 1885, sold and delivered to said Dees & Barton on a credit of thirty days certain goods and merchandise, of the value of $631.48, of which defendant had notice, and although said Dees & Barton, in compliance with their contract, delivered to defendant sufficient cedar logs to pay such debt, it has not paid the same, though often requested so to do, and the same is still due and unpaid, and plaintiffs have performed all conditions precedent on their part, and all things have happened to entitle them to maintain their action.

The allegation in the second count, in substance, is, that defendant having agreed to purchase of Dees & Barton certain cedar logs, at their instance and request agreed with, and promised plaintiffs that if they would sell and deliver to Dees & Barton on a credit such goods and merchandise as they should from time to time have occasion for and require, said defendant would, as soon as said logs were delivered to it, pay the purchase money, or so much thereof as might be necessary, to the plaintiffs in payment of said goods and merchandise; and plaintiffs aver that, confiding in said promise of defendant, they, in July, 1885, sold and delivered to Dees & Barton goods and merchandise of the value of $631.48, of which defendant had notice, and that in accordance with their said agreement Dees & Barton delivered to defendant sufficient cedar logs to pay plaintiffs the full amount of their

said debt, and that the defendant has not paid the same, though often requested to do so, and the same is still due and unpaid.

The third in the common count for money received by defendant for the use of plaintiffs.

The bill of particulars filed with the declaration is an account made out against Dees & Barton for goods purchased by them from F. A. Wolfe & Co.

The plea interposed by the defendant corporation is, "that it was never indebted as alleged in plaintiffs' declaration," and issue was joined on this.

After the filing of said plea, defendant by its attorneys moved in open court for leave to amend the plea by pleading the statute of frauds, upon the ground of surprise, as stated in the motion, "the court ruling that such defense is not embraced in the general issue, but should be pleaded specially." This motion was overruled and the cause referred to W. W. Hampton, Esq., a practicing attorney, as referee for decision.

After a hearing before the referee, a judgment was entered by him in favor of plaintiffs for $554.93 and costs, from which an appeal has been taken to this court.

*S. Y. Finley* for Appellant.

*Lutterloh & Davis, Ashby & Thrasher* for the Appellees.

MABRY, J. :

The first assignment of error made here by. appellant is, that the Circuit Court erred in holding "that the statute of frauds must be pleaded specially, and that the defense of such a statute is not embraced in the general issue, and at the same time refusing to allow the defendant to amend its pleading so as to set up such defense." The record fails to show that the Circuit Court held the statute of frauds must be pleaded specially, and that the defense of such statute is not embraced in the general issue. A motion was made on behalf of appellant to permit it to amend its plea by pleading the statute of frauds, for the reason that the court had ruled the statute of frauds must be specially pleaded, and such a defense is not embraced in the general issue. This motion was overruled, but there is nothing to show that the court had made such a ruling as therein recited. The mere recital in the motion of such a ruling will not authorize us to assume that such had been made. The record does, however, show that before the case was referred to the referee, the Circuit Court refused the application of appellant to amend its plea by pleading the statute of frauds. Whether or not there is available error to appellant in this ruling, will depend, we think, upon the necessity of such a plea in order to determine the real question in controversy between the parties. Under the statute it is made the duty of the trial court to al-

low, upon due application, amendments of all defects and errors in proceedings in civil causes, upon such terms as may be deemed fit, that may be necessary for the purpose of determining in the existing suit the real question in controversy between the parties. Section 74, Chapter 1096, Laws of Florida; Robinson vs. Hartridge, 13 Fla., 510; Livingston vs. Anderson, 30 Fla., 117, 11 South. Rep., 270. The application to amend in the case before us was made before the case was referred to the referee, and if the amendment asked for was necessary to determine the real question between the parties, it was error to refuse it. But it affirmatively appears from the record, we think, that the plea was not necessary to determine the controversy between the parties, and no harm came to appellant by reason of the ruling refusing the plea to be filed. This will more fully appear by what follows in this opinion.

The second assignment of error is, that the referee admitted improper evidence on behalf of the plaintiff; and the third is, that the evidence is at variance with the allegations of the declaration, and does not sustain them. The other assignments of error involve substantially the same questions as are presented under the second and third assignments.

The first count in the declaration alleges an undertaking and promise on the part of appellant to pay appellees for such goods and merchandise as the firm of Dees & Barton should have occasion for and require from time to time, to carry on their business of

cedar getters, in subserving a business purpose of appellant; and that appellees, confiding in the promise of appellant, sold and delivered to Dees & Barton, on their application, goods and merchandise of the value of six hundred and thirty-one dollars and forty-eight cents, of which sale and delivery appellant had notice. There is no testimony in the record before us to show that appellant ever promised to pay appellees for the goods which they should sell to Dees & Barton. The testimony does tend to show that Otto Gudenrath, who was at the time agent for appellant, and who had entered into an arrangement with Dees & Barton to furnish cedar logs for his company, agreed to pay the purchase price of such cedar as should be delivered to him by Dees & Barton to the appellees, to be applied by them in payment of such goods as they should sell to Dees & Barton. It also tends to show that this agreement was made by Gudenrath with the consent, and at the instance of Dees & Barton, who were desirous of securing goods on a credit from appellees. F. A. Wolf, one of the appellees, and who represented his firm in this transaction, testified that he sold the goods to Dees & Barton ; that Barton, of the firm of Dees & Barton, applied to him to purchase the goods on time, and he was informed that he could not get them without the money, and he, Barton, then stated that his firm was getting cedar for Gudenrath, and asked, if he would become responsible for the goods, would appellees sell him. This proposition was ac-

cepted, and Barton was asked to bring in Gudenrath, and the matter would be settled.    What followed between the parties, as detailed by Wolfe, is as follows : "Afterwards during the same day, Mr. Barton and Mr. Gudenrath came in.    The matter was talked over between the three of us, and Mr. Gudenrath said that he had entered into an agreement with Dees & Barton for securing cedar logs, or cedar, for him, and that the agreement would last perhaps until the December following.    They, Mr. Barton and Mr. Gudenrath, at the same time also stated that there was a raft of cedar logs, or cedar, on the way, of about a thousand logs ; that Mr. Gudenrath had made advances on that raft, and they did not think that there would be anything, or very little if any, coming to Dees & Barton from that raft, after Mr. Gudenrath's advances had been taken from the proceeds.    If anything was left, it was agreed by Mr. Gudenrath and Mr. Barton that it should be paid to us, F. A. Wolfe & Co., and we to place that amount to the credit of Dees & Barton, and notify Dees & Barton of this credit.    They also stated that in about thirty days there would be another raft coming in, of about two thousand logs, and that the proceeds of that raft and all other cedar sent in by Deees & Barton should be turned over to F. A. Wolfe & Co. by Mr. Gudenrath to satisfy our claim against Dees & Barton for goods we had sold Dees & Barton mentioned above.    I told Mr. Barton in the same conversation that I could not afford to sell them goods on

more than thirty days' time, and that he must endeavor to get those two thousand logs in in thirty days to pay me for these goods. Mr. Gudenrath was present during last above conversatson between Barton and myself, and voluntarily said that if Dees & Barton would assure him that they had this cedar on hand, in case he wanted any money for these goods before the cedar was brought in, he, Mr. Gudenrath, would give us a draft on New York for payment of this account of Dees & Barton. With this guaranty I let Dees & Barton have the goods for which I sue." Barton, in testifying for appellees, corroberates Wolfe in his account of the transaction. The substance of his testimony on this point is, that Dees & Barton desired to get goods from appellees, and it was agreed that his firm should deliver sufficient cedar timber to Gudenrath to pay for goods to be purchased from appellees, and that Gudenrath was to turn over the proceeds of the cedar, after paying certain advancements already made to Dees & Barton by Gudenrath, to the appellees to be applied on the debt for the goods. This witness further states-that he consented to this agreement and Gudenrath promised to turn over the proceeds of the cedar to appellees. He also stated that Dees & Barton delivered to Gudenrath, agent for appellant, sufficient cedar to pay all advancements made prior to this arrangement, and the amount of the debt for goods due appellees.

Otto Gudenrath testified for appellant that he went with Barton, at his request, to the business place of appellees, and told Mr. Wolfe that he, Gudenrath, had made a contract with Dees & Barton to buy cedar for him at Steinhatchie, but that he would not be responsible for any goods that Dees & Barton got. He further testified that "Mr. Wolfe said that Barton had told him that there was a raft of cedar on the way from 'Fish Bone'. I replied to Mr. Wolfe that that was a different contract, and I had advanced money on the 'Fish Bone' contract. Mr. Wolfe then asked Mr. Barton how long it would take him to bring a raft down from Steinhatchie, where Barton spoke of opening a store. Mr. Barton replied, it would take about thirty days, in which time he could bring down enough cedar from Steinhatchie to pay for goods that he intended to get. * * Mr. Wolfe asked me whenever this cedar came in that Barton spoke about furnishing me, whether I would turn over the proceeds of that cedar to him, Wolfe? I told Mr. Wolfe that I had no right to make any debts, but whenever the cedar spoken about was delivered to me, and there was any money coming to Dees & Barton, I would turn it over to Wolfe & Co., if Dees & Barton were satisfied with this arrangement." He further testified that he never requested appellees to sell the goods to Dees & Barton, and never individually, or as agent for appellant,

24

promised to pay, or assume to be responsible for the
same, and that he had no right to bind his company
in that way.

The testimony further tends to show that after the
above conversation Dees & Barton delivered sufficient
cedar to Gudenrath to pay the advances which he had
made them on the cedar, and the amount due for the
goods sold by appellees to Dees & Barton, and that,
instead of turning over the proceeds to appellees, Gu-
denrath paid it to Dees & Barton and to other parties
to whom he subsequently became liable on account of
Dees & Barton for goods purchased by them.

Objections were made and exceptions taken to the
admission of testimony in reference to the transaction
detailed above, on the ground that there was no writ-
ten contract evidencing the understanding of the par-
ties. The transaction was in parol. The objections
on the ground stated were not well taken. If we were
to concede that Gudenrath had authority to and did
bind his principal, the appellant here, in his alleged
promise to turn over the proceeds of cedar to appel-
lees, to be applied by them in payment of goods sold
to Dees & Barton, it would not be a promise to pay a
debt, default or miscarriage of another person. Such
a promise would be to pay the debt of appellant due
for the cedar purchased from Dees & Barton, and,
under the circumstances, would be founded upon a
sufficient consideration. Even the promise to pay the

debt of a third person arising out of some new consideration of benefit to the promisor, or harm to the promisee moving to the promisor, either from the promisee or the original debtor, is not within the statute of frauds, although the original debt still subsists and remains unaffected by said agreement. Here the alleged promise is by the agent of the vendee of cedar logs to pay over the purchase money therefor, with the consent of the vendors, to third parties who were to furnish goods to such vendors. Counsel for appellant is mistaken in supposing this transaction to be within the statute of frauds. We do not deem it necessary to go into a discussion of the authorities cited by him, but it is sufficient to say that they do not sustain his position. The view we announce is sustained by the following authorities: Calkins vs. Chandler, 36 Mich., 320; Farley vs. Cleveland, 4 Cowen, 432; Cleveland vs. Farley, 9 Cowen, 639; Mallory vs. Gillett, 21 N. Y., 412; Emerson vs. Slater, 22 How., 28; Wilson vs. Bevans, 58 Ill., 232; Runde vs. Runde, 59 Ill., 98; Putney vs. Farnham, 27 Wis., 187; Mills vs. Brown, 11 Iowa, 314; Johnson vs. Knapp, 36 Iowa, 616; Bess-hears vs. Rowe, 46 Mo., 501; Clymer vs. DeYoung, 54 Penn. St., 118; Fullam vs. Adams, 37 Vt., 391; Browne on the Statute of Frauds, sections 165, 166. The above conclusion makes it apparent that there was no error, as shown by this record, in the refusal to allow the plea of the statute of frauds to be filed, as such a defense could not have availed appellant, if the plea had been interposed.

Further objections were made to the testimony in reference to this transaction, on the ground that Gudenrath had no authority to bind the appellant company by his alleged promise to appellees, and that the evidence is not sufficient to sustain the finding of the referee on this point. At the time of the alleged promise, Gudenrath was acting as agent for appellant in buying cedar for it. The testimony shows that he represented himself, and was generally known in Cedar Keys, Florida, as the agent for appellant, and he did act in this capacity in buying cedar. The witness, F. A. Wolfe, testified that Gudenrath was the authorized agent for appellant at the time of the transaction in question, but witness did not know the extent or limitation of his agency. He says that he looked to the appellant in this transaction for pay. Barton states that the advance of goods by appellees to Dees & Barton was necessary to enable them to procure the cedar which they turned over to Gudenrath. It does not appear that Gudenrath purchased any cedar for appellant on a credit, or made any debts in his principal's name on account of cedar transactions. He made advancements of money on such transactions, and in one instance gave written or verbal orders to another firm of merchants in Cedar Keys to furnish goods to Dees & Barton. In this case the goods were charged to Gudenrath and paid for by him. Gudenrath testified that when F. A. Wolfe asked him if he would turn over to Wolfe & Co. the proceeds of the cedar to

be delivered by Dees & Barton, he told Mr. Wolfe that he, Gudenrath, would not become responsible for the debts of Dees & Barton, and had no right to make any debts, but that when the cedar was delivered he would turn over the proceeds, if the arrangement was satisfactory to Dees & Barton. He says what he meant by not having any right to make debts, was that he had no authority to bind his company in that way. All three of the parties personally present at the time of the alleged promise were examined, and there is no contradiction of this statement made by Gudenrath; unless it is contained in the statement of Wolfe that he did not know the extent or limitation of his agency.

Where there is a general agent to accomplish a certain purpose, and the agent acts within the general scope of his authority in effecting the object of the agency, his acts will bind his principal so far as third persons dealing with him in good faith are concerned. At the same time it is undoubtedly true that a principal may confer as much or as little authority as he sees fit upon his agent, and he may also impose such lawful restrictions and limitations upon his agent as may be deemed proper, and such restrictions and limitations will be as binding upon third persons who have notice of them as upon the agent himself, provided the principal does nothing to waive them. Mechem on Agency, sec. 279; Story on Agency, sec. 105; Barnard vs. Wheeler, 24 Maine, 412; Bryant vs.

Moore, 26 Maine, 84; Longworth vs. Conwell, 2 Blackford, 469. The agency of Gudenrath, as disclosed by the evidence, was to buy cedar for appellant, and, as before stated, it does not appear that he made any purchases on a credit. The object of this suit is not to recover from appellant money still due for cedar purchased by its agent from Dees & Barton, as it is evident from the record that the amount due on this purchase has been paid to them, or to others on their account. The purpose is to hold the appellant liable on a promise of its agent to pay the proceeds of the cedar to third parties who had no interest in the cedar, and were not connected with the cedar transaction between appellant and Dees & Barton. There is no evidence to show that the agent had conferred upon him expressly, authority to bind his principal in such a collateral way. Conceding that Gudenrath did promise to turn over to appellees the proceeds of cedar purchased by him from Dees & Barton, we are not prepared to admit that he was acting within the scope of his authority as agent, as shown by the testimony before us. We think the testimony shows that at the time of the alleged promise, appellees were informed that Gudenrath had no right to impose any such obligations on his company, and there is nothing in the record to show that it ever, in any way, ratified the alleged promise. The statement of Wolfe, that he did not know the extent or limitation of the agency here, is not irreconcilable with the statement of Gu-

denrath, that he would not be responsible for the debt of Dees & Barton, and that he had no right to make any debts or bind his company in that way. Taking the statement of Gudenrath on this point to be true, as there is no contradiction of it, it shows, we think, that appellees were informed that he had no authority to bind his company in reference to the alleged promise to pay them the proceeds of cedar purchased from Dees & Barton. Under the rule already stated, one who deals with an agent, with knowledge that he has no authority to bind his principal, can not hold the principal liable.

Testimony was also admitted, over the objection of appellant, tending to show a custom in Cedar Keys, for agents for cedar buyers to make arrangements for cedar getters, similar to the one claimed by appellees to have been made by Gudenrath with them, and that in such cases the principal buyers are regarded as bound for goods furnished the cedar getters. We do not deem it necessary to give the substance of the evidence in reference to the alleged custom, or to consider whether or not, if such a custom exists, it was properly proven in this case. If we concede the position of counsel for appellees to be correct, that where a principal empowers his agent to transact business of a nature in reference to which there is a well defined and publicly-known usage, it may be presumed, in the absence of anything to indicate a different intent, the authority was conferred in contemplation of the usage, and third persons dealing with the agent in good faith will be protected against limitations of usual authority

of which they had no notice; it will not benefit appellees. If they had not been informed that Gudenrath had no right to bind his company in the alleged transaction, a further question of appellant's liability, in view of the custom claimed to exist in Cedar Keys in reference to such matters, would be presented. Appellees had notice, however, that Gudenrath had no authority to create a liability against appellant, and that he did not undertake to impose any by the transaction in question, and they can not rely upon usage to enlarge or contradict the known powers of an agent. In Barnard vs. Kellogg, 10 Wall., 383, it is said: "The proper office of a custom or usage in trade is to ascer tain and explain the meaning and intention of the parties to a contract, whether written or in parol, which could not be done without the aid of extrinsic evidence. It does not go beyond this, and is used as a mode of interpretation on the theory that the parties knew of its existence, and contracted with reference to it. It is often employed to explain words or phrases in a contract of doubtful signification, or which may be understood in different senses, according to the subject-matter to which they are applied. But if it be inconsistent with the contract, or expressly or by necessary implication contradicts it, it can not be received in evidence to affect it." In reference to powers conferred by usage, it is stated in Mechem on Agency, sec. 281: "Usage, however, can not operate to change the intrinsic character of the relation, nor will it be permitted as between the principal and agent, or as between the principal and third persons having notice of

them, to contravene express instructions, or to contradict an express contract to the contrary." 2 Rice on Evidence, sec. 349, page 903; Fox vs. Parker, 44 Barb., 541; Simmons vs. Law, 3 Keyes (N. Y.), 217; Walls vs. Bailey, 49 N. Y., 464; Wigglesworth vs. Dallison, 1 Doug., 201; s. c. Smith's Leading Cases, part 2, page 670, with English and American notes, where numerous authorities bearing on the subject of usage are collected. We think the evidence in the record before us does not impose liability on the appellant for the demand sued for, and that a usage or custom in Cedar Keys, Florida, could not, under the circumstances of the case, be shown to create liability.

The judgment is, therefore, reversed, and the cause remanded.