ATLANTIC BANK OF NEW YORK, Appellant, *v.* CARNEGIE HALL CORPORATION et al., Respondents.

First Department, April 21, 1966.

*Walter J. Holzka* of counsel (*Winthrop, Stimson, Putnam & Roberts,* attorneys), for appellant.

*H. H. Nordlinger* of counsel (*Jacob I. Charney* and *Neil B. Hirschfeld* with him on the brief; *Nordlinger, Riegelman, Benetar & Charney* and *Stroock & Stroock & Lavan,* attorneys), for respondents.

McNALLY, J. In this action on a promissory note against accommodation indorsers, the question is whether the allegations and proof in support of the defenses are precluded in the light of the following holding of *Mount Vernon Trust Co.* v. *Bergoff* (272 N. Y. 192, 196): "Public policy requires that a person who, for the accommodation of the bank executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced."

The promissory note dated May 16, 1963 for $40,000 is payable six months thereafter and indorsed by defendants-respondents the Carnegie Hall Corporation (Carnegie) and Gerald F. Warburg. The maker, Symphony Foundation of America, Inc. (Symphony), and its administrative director, Jerome Toobin, who also indorsed the note, are not parties to this action.

Carnegie is a nonprofit, tax-exempt organization governed by a board of trustees appointed by the Mayor of the City of New York. Warburg is one of its trustees and a musician and a patron of music. Symphony sponsored an orchestra known as Symphony of the Air.

In or about June, 1962, Toobin, on behalf of Symphony proposed a series of 10 concerts at Carnegie Hall for the 1962–1963 season. This involved an advance deposit of $300 for each date for the use of Carnegie Hall, advertising expenses, deposits for the engagement of soloists and the services of musicians — the total of which was approximately $35,000. Toobin requested and defendants consented to their indorsement of a promissory note of Symphony in said amount payable to the plaintiff to enable Symphony to finance the preparation for the concerts. It was contemplated and agreed that the net box-office receipts were to be applied first to payment of the note.

Prior to June, 1962, Toobin and his wife had borrowed funds from the plaintiff. During June, 1962, in behalf of Symphony, Toobin applied to Leroy H. Schoner, a vice-president of plaintiff, for a loan of $35,000 to be used for expenses incident to the

proposed concerts at Carnegie Hall. Symphony tendered the defendants as indorsers. Plaintiff secured financial data, particularly as to defendant Warburg, and thereafter accepted and discounted the note of July 12, 1962. Carnegie undertook to withhold from the net box-office receipts for plaintiff's benefit the sums required to pay the note.

The proceeds of said loan were on July 12, 1962 credited to Symphony's bank account with the plaintiff. At the time of the loan Symphony maintained a modest account with the plaintiff which, however, was not overdrawn. Thereafter, Symphony caused to be paid out of said account the various preliminary expenses for the 1962–1963 concerts. Out of the net box-office receipts Carnegie caused to be liquidated the $35,000 loan.

The final payment of $2,600 on the 1962 loan was made by Carnegie on April 18, 1963. On April 22, 1963 the plaintiff acknowledged full payment of the said loan.

The last of the 1962–1963 concerts was performed on May 13, 1963. In the Spring of 1963 Toobin proposed to Carnegie a series of 12 concerts for 1963–1964. The 1962–1963 series had involved 10 concerts. Symphony then owed Carnegie a balance of $1,900 incident to the 1962–1963 concerts. Toobin requested the financial aid of defendants as indorsers in securing a loan of $40,000 from the plaintiff to finance the series of concerts for 1963–1964. Defendants complied and the note of May 16, 1963 for $40,000 which is the basis of this action was indorsed by defendants. The note with the letter of Carnegie dated May 21, 1963 was delivered to the plaintiff. The letter advised the plaintiff that Carnegie was authorized to withhold from the net box-office receipts of the 1963–1964 series of 12 concerts to be given by Symphony the sum of $40,000 for payment to plaintiff of its loan to Symphony.

Prior to the delivery of the note to plaintiff, Symphony had overdrawn its account with the plaintiff to the extent of $32,726.54. Mr. Schoner, plaintiff's vice-president, was very much concerned. He pressed Toobin for the note of Carnegie indorsed by Warburg, which had been at various times promised by Toobin. Toobin sought to pacify Schoner. On or about April 23, 1963 Schoner tendered the note of Symphony in blank amount, without defendants' indorsements, to temporarily cover the overdraft of Symphony, pending receipt of a note for $40,000 indorsed by defendants. Schoner consulted with his superior, one Schnyder, since deceased. The tender was rejected.

On May 3, 1963 plaintiff was informed that defendant Warburg wanted a letter from the plaintiff stating that the 1962 loan of $35,000 had been paid. Plaintiff's letter signed by Schnyder

dated May 1, 1963 informs Warburg the said note was paid in full April 19, 1963. It also states: " We are waiting for a new note, indorsed by you and the Carnegie Hall Corporation, so that we may extend further necessary facilities to Symphony Foundation of America, Inc."

Schoner's testimony enabled the jury to find it was plaintiff's intention on May 1, 1963 to apply the $40,000 loan to the overdraft of Symphony. On May 21, 1963, when the note indorsed by defendants was received by plaintiff, the proceeds thereof were applied to Symphony's then overdraft of $32,726.54. After such application the bank balance of Symphony was $3,032.81. Carnegie was not paid the deposit required to reserve the use of its concert hall for the 12 concerts projected for 1963–1964; the balance due it for the 1962–1963 series of Symphony was never paid. In addition, Carnegie has not been reimbursed for advertising and other expenses advanced to promote the 1963–1964 series of concerts. Symphony is insolvent and Toobin is bankrupt.

The promissory note here involved is an unconditional promise to pay. The contemporaneous undertaking by Carnegie to withhold the net box-office receipts for application to the loan does not affect defendant indorsers' obligation to pay. Moreover, it does not appear that plaintiff undertook any obligation as to Symphony's use or disbursement of the proceeds of the loan, or that the plaintiff agreed to refrain from exercising its right of setoff. In the circumstances, defendants are precluded from asserting their written obligation is not to be enforced according to its terms. (*Mount Vernon Trust Co.* v. *Bergoff*, 272 N. Y. 192, *supra*; *Manufacturers Trust Co.* v. *Palmer*, 13 A D 2d 772.)

There can be no doubt, on this record, that defendants at the time they indorsed the note had no knowledge of Symphony's overdrawn account with the plaintiff. Implicit in the jury's verdict is the finding that defendants would not have become accommodation indorsers in the light of the financial plight of Symphony. It may be assumed on this record that the jury also found that plaintiff was only concerned with recouping the overdrafts of Symphony. Plaintiff's rejection of Symphony's tender of its note for the overdraft also evinces its recognition of Symphony's financial incapacity to meet the overdraft. It was at this critical time that defendant Warburg was assured by plaintiff the 1962 note indorsed by him had been paid in full and " we are waiting for a new note, endorsed by you and the Carnegie Hall Corporation, so that we may extend further necessary facilities to Symphony Foundation of America, Inc."

Plaintiff's conduct and whether it was calculated to and did induce defendants to believe the proceeds of the loan would be available for the promotion of the 1963–1964 series of concerts on this record presented issues of fact. Having assumed to respond to Warburg's inquiry, it was plaintiff's duty " to speak fully and truthfully ". (*Conlew, Inc.* v. *Uhler,* 239 App. Div. 380, 382; *Matter of First Citizens Bank & Trust Co. of Utica* v. *Sherman,* 250 App. Div. 339.)

Defendants are not precluded from establishing they were fraudulently induced to indorse the note as accommodation indorsers to enable the plaintiff to satisfy the overdrafts of Symphony when to the knowledge of the plaintiff it was the intention of the defendants to make available to Symphony capital with which to arrange and promote the 1963–1964 concerts.

While plaintiff was under no obligation to police or supervise the expenditures of Symphony, its application of the proceeds of the loan to the satisfaction of the overdrawn account of Symphony was relevant on whether it was plaintiff's intention expressed prior to the delivery of the note to " extend further necessary facilities to Symphony Foundation of America, Inc."

It may well be that the overdrafts were applied to the promotion of the 1963–1964 concerts. In that event the alleged defenses would not have been sustained. The record, however, does not establish or even suggest that the overdrafts resulted from such application nor does the record show the contrary.

The evidence enabled the jury to find to plaintiff's knowledge and with its acquiescence that the defendants were induced to indorse the note as accommodation indorsers on the announced expectation that the proceeds would be used to finance the new series of concerts. Yet it was not shown that the overdrafts were not for that purpose, but for another and inconsistent purpose. A general verdict responsive to a charge basing liability on several grounds, one of which is untenable, requires a new trial. (*Dore* v. *Long Is. R. R. Co.,* 23 A D 2d 502; *Thomas* v. *Central Greyhound Lines,* 6 A D 2d 649, 653.)

In the circumstances, the judgment should be reversed, on the law, on the facts and in the interests of justice, and a new trial granted, with costs and disbursements to abide the event.

Botein, P. J., Breitel, Stevens and Bastow, JJ., concur.

Judgment, so far as appealed from, unanimously reversed, on the law, on the facts and in the interests of justice, and a new trial ordered, with $50 costs to abide the event.