■ EMIGRANT BANK et al., Appellants, v UBS REAL ESTATE SECURITIES, INC., Respondent. [854 NYS2d 39]—

Defendant bid on plaintiffs' mortgage loan portfolio in an on-line auction, and the bid was accepted. The bid form provided that the sale is "subject to a mutually acceptable Purchase and Sale agreement, which will be subject to negotiation, but substantially in the form of the agreement posted to the [bidding Web] site." The bid form provided space for the bidder to add conditions, and defendant added several, including: "a mutually acceptable mortgage loan sale and servicing agreement will be negotiated in good faith. The agreement will contain standard reps and warranties." For more than two months thereafter, the parties continued to negotiate the terms of the final purchase and sale agreement. After initially indicating its readiness to execute the agreement, defendant broke off negotiations, claiming the portfolio included some loans with default interest rate riders. Plaintiffs then commenced this action, alleging defendant's reason for terminating negotiations was pretextual since the presence of the riders had been disclosed in the bid information.

The documents did not conclusively contradict the pleading, and it was thus premature to dismiss the contract claim (*see Foster v Kovner*, 44 AD3d 23, 28 [2007]; *Richbell Info. Servs. v Jupiter Partners*, 309 AD2d 288, 289-290 [2003]). "Subject to" in the bid form did not unmistakably condition assent on the execution of a definitive agreement at some later juncture. Any later agreement to be executed was limited to terms substantially the same as those in the agreement posted on the bidding Web site and was to contain the standard industry representations and warranties as set forth in the conditions added by defendant on the bid form. "Subject to" language in a subsequent UBS commitment memorandum was similarly limited to such

representations and warranties and to other matters described therein as "miscellaneous." While defendant argued that transactions of this type are usually memorialized in a more extensive writing than the bid form (*see Elizabeth St. v 217 Elizabeth St. Corp.*, 276 AD2d 295 [2000]), plaintiffs specifically alleged that in this industry bids are considered binding.

The authorities relied upon by the motion court for the proposition that the bid was conditioned on the execution of a more definitive binding agreement are distinguishable since they involve unequivocal reservations of assent. In *Prospect St. Ventures I, LLC v Eclipsys Solutions Corp.* (23 AD3d 213 [2005]), the letter agreement was expressly conditioned on the execution of a definitive agreement, and the intent of the parties not to be bound was further manifest from references to a "proposed" commitment and a "proposed" transaction, and from an express statement that the letter (in the record in that case) was "not a commitment." In *Aksman v Xiongwei Ju* (21 AD3d 260, 260 [2005], *lv denied* 5 NY3d 715 [2005]), the opening line of the letter of intent stated that it was "a basis for conducting business" and repeatedly emphasized that it would be replaced by a "contract," thereby reflecting the intent to enter into a binding agreement at a later date.

The agreement was reasonably certain as to its material terms (*see Cobble Hill Nursing Home v Henry & Warren Corp.*, 74 NY2d 475, 482 [1989], *cert denied* 498 US 816 [1990]). The bid price was sufficiently definite as a percentage of the value of the fixed rate mortgages in the pool. There is an issue of fact as to whether subsequent price adjustments were both immaterial and the subject of renegotiations of already agreed-upon terms. That the portfolio's mortgages could be paid off or defaulted from day to day, leaving its composition in flux after submission of the bid, did not render the bid indefinite.

Dismissal of the cause of action for breach of the duty to negotiate (*see generally Arcadian Phosphates, Inc. v Arcadian Corp.*, 884 F2d 69, 72 [2d Cir 1989]) was flawed for the same reason as dismissal of the contract claim. Whether defendant breached such duty presented a question of fact (*see Goodstein Constr. Corp. v City of New York*, 67 NY2d 990 [1986]). The promissory estoppel cause of action was similarly viable, since— contrary to the motion court's conclusion that there was no binding agreement—there was a clear and unambiguous promise that could give rise to reasonable detrimental reliance (*see e.g. Esquire Radio & Elecs., Inc. v Montgomery Ward & Co., Inc.*, 804 F2d 787, 793 [2d Cir 1986]).

The cause of action for negligent misrepresentation was

properly dismissed as an attempt to recast the contract claim in tort, while lacking the requisite underlying relationship of trust and confidence (*see Kimmell v Schaefer,* 89 NY2d 257, 263-264 [1996]; *Saunders v AOL Time Warner, Inc.,* 18 AD3d 216 [2005]). The lack of such relationship was properly determined as a matter of law (*cf. Knight Sec. v Fiduciary Trust Co.,* 5 AD3d 172, 174 [2004]), since it must have existed prior to the transaction giving rise to the alleged wrong, and not as a result of it (*Elghanian v Harvey,* 249 AD2d 206 [1998]).

The request for specific performance was properly dismissed for failure to set forth nonconclusory allegations as to why an award of damages would be inadequate.

We have considered plaintiffs' other contentions and find them unavailing. Concur—Saxe, J.P., Gonzalez, Buckley and Acosta, JJ. [*See* 2007 NY Slip Op 30291(U).]