OPINION OF THE COURT
Carolyn E. Demarest, J.
Defendants Southwest Securities Inc. and Leighton Stallones (collectively referred to as Southwest defendants) move for an order, pursuant to CPLR 3211 (a) (7), dismissing the complaint as against them.
The Southwest defendants’ motion is granted to the extent that the breach of fiduciary duty cause of action (fifth cause of action) is dismissed. The motion is otherwise denied.
In the complaint, plaintiff Barkany Asset Recovery & Management alleges that it is the assignee of a loan and associated rights entered into between nonparty Pratt Foreclosures, LLC and defendant SSJ Development, LLC. In 2008, SSJ was in the process of developing real properties in Brooklyn, New York, and through its managing member, nonparty Stephen Jemal, SSJ approached Pratt in order to obtain a short-term loan to address SSJ’s immediate cash flow needs pending SSJ’s receipt of permanent financing. In order to satisfy Pratt’s requirement that the loan be fully secured, Jemal told Pratt that he would allow Pratt to have a secured interest in a securities account Je *676 mal had with Southwest that was administered by Stallones, a senior broker and vice-president of Southwest. In October and November of 2008, Jemal provided Pratt with account statements showing that Jemal had accounts with Southwest with an aggregate value over $3,000,000.
Plaintiff asserts that the Southwest defendants knew that Jemal was providing these account statements for the purpose of inducing Pratt to make the $820,000 loan at issue based on the timing of emails in which Stallones sent the statements to Jemal’s assistant and Jemal’s assistant thereafter forwarded them to Pratt. More importantly, plaintiff alleges that, at the November 28, 2008 closing of the loan, but prior to the funding of the loan in the amount of $820,000, Pratt’s attorney, Stephen Kwestel, telephoned Southwest’s offices and spoke with Stallones in order to verify the existence of Jemal’s accounts with Southwest and the value of the accounts. During the conversation, Kwestel allegedly informed Stallones of the value of the loan and Stallones responded by saying that
“the value of the Jemal Securities Accounts was sufficient to secure the Loan; and that the Accounts would be subject to a first lien in favor of Pratt. Stallones stated, however, that because of the Thanksgiving Holiday, a letter from Southwest confirming the freeze of the Accounts could not be provided until the following week” (complaint 1Í 39).
At or around the same time, SSJ sent Southwest a letter dated November 28, 2008 in which SSJ stated that SSJ had entered into a loan agreement to borrow $820,000 from Pratt, and requested that Southwest freeze the securities held in an account with Southwest.[1]
After receiving this oral verification from Stallones, Pratt funded the loan by wiring $820,000 to SSJ’s designated bank account. Shortly thereafter, Stallones sent Pratt a letter on *677 Southwest’s letter head, dated December 2, 2008, stating “[t]his is to acknowledge that SSJ Development has asked us to freeze account xxxxxxx and asked that the account continue to be frozen until June 28th, 2009. This is to confirm that we are freezing the account and will not release this account without authorization from Pratt Foreclosures LLC.” In the months following the December 2, 2008 letter, Stallones sent Pratt additional letters in which he stated that Southwest would continue the freeze on the account, with the last of these letters extending the freeze through September 30, 2010.
Although SSJ thereafter made some partial payments of interest on the loan, it informed Pratt that it would be unable to repay the principal on the loan’s May 28, 2009 maturity date, and has since defaulted despite Pratt’s extending the loan’s maturity date. Pratt thereafter contacted Southwest about Jemal’s securities held by it, and Southwest stated that there was never more than $300 in Jemal’s account meant to secure the loan.
Based on this factual background, plaintiff, Pratt’s assignee, has commenced this action alleging seven causes of action as follows: (1) breach of the loan agreement against SSJ (first cause of action); (2) breach of the freeze agreement against Southwest (second cause of action); (3) common-law fraud against Stallones and Southwest (third cause of action); (4) negligent misrepresentation against Stallones and Southwest (fourth cause of action); (5) breach of fiduciary duty against Southwest (fifth cause of action); (6) negligence against Stallones and Southwest (sixth cause of action); and (7) specific performance against Stallones and Southwest for delivery of the amount of securities represented to be held in Jemal’s account and frozen for the benefit of Pratt. The Southwest defendants now move to dismiss the complaint for failure to state a cause of action pursuant to CPLR 3211 (a) (7).
In considering a motion to dismiss for failing to state a cause of action under CPLR 3211 (a) (7), the pleading is to be afforded a liberal construction (CPLR 3026), and the court should accept as true the facts alleged in the complaint, accord plaintiff the benefit of every possible inference, and only determine whether the facts, as alleged, fit within any cognizable legal theory (see Hurrell-Harring v State of New York, 15 NY3d 8, 20 [2010]; Leon v Martinez, 84 NY2d 83, 87-88 [1994]). Although evidentiary material may be considered in determining the viability of a complaint, the complaint should not be dismissed unless defendant has established “that a material fact alleged by the *678 plaintiff is not a fact at all and that no significant dispute exists regarding it” (Stewart v New York City Tr. Auth., 50 AD3d 1013, 1014 [2d Dept 2008] [internal quotation marks and citations omitted]; see also Lawrence v Graubard Miller, 11 NY3d 588, 595 [2008]; Nunez v Mohamed, 104 AD3d 921, 922 [2d Dept 2013]).
The Southwest defendants’ primary contention in asserting that plaintiff has failed to state a cause of action is that they did not owe a fiduciary or other kind of duty to Pratt, and the absence of such a duty precludes any claim against them with respect to plaintiff’s causes of action for negligent misrepresentation, negligence and common-law fraud to the extent that any such claim is based on a nondisclosure of a fact. It is true that entities such as banks and brokerage houses generally do not owe a duty to non-customers and thus generally may not be held liable for the torts of their clients (see Winkler v Battery Trading, Inc., 89 AD3d 1016, 1018 [2d Dept 2011] [bank]; Parklex Assoc. v Royal Capital Mkts. Corp., 36 Misc 3d 1232[A], 2012 NY Slip Op 51574[U] [Sup Ct, Kings County 2012] [securities broker]; In re Agape Litig., 681 F Supp 2d 352, 361 [ED NY 2010] [brokerage firm]). This general rule is not absolute, and the Appellate Division, Second Department and other jurisdictions have found that, while a bank may not owe a duty to speak when a non-customer inquires about a customer’s account, when a bank does speak about the account, it owes a duty to speak carefully (Anchor Lbr. Corp. v Manufacturers Trust Co., 242 App Div 656, 656 [2d Dept 1934]; see also Atlantic Bank of N.Y. v Carnegie Hall Corp., 25 AD2d 301, 306 [1st Dept 1966]; J & J Trading Co. v Republic Natl. Bank, 186 Misc 2d 52, 59 [Civ Ct, NY County 2000]; ADL, LLC v Tirakian, 2010 WL 3925131, *10, 2010 US Dist LEXIS 110563, *33-36 [ED NY, Aug. 26, 2010, No. CV 2006 5076 (SJF)(MDG)], report & recommendation adopted 2010 WL 392135, 2010 US Dist LEXIS 104883 [ED NY, Sept. 29, 2010, No. CV 2006 5076 (SJF)(MDG)]; Freund v Weinstein, 2009 WL 2045530, *2, 2009 US Dist LEXIS 57991, *4-7 [ED NY, July 8, 2009, No. CV 2008 1469 FB MDG]; Ragland v Shattuck Natl. Bank, 36 F3d 983, 990-992 [10th Cir 1994]; Berkline Corp. v Bank of Mississippi, 453 So 2d 699, 702 [Miss 1984]). Although all these cases stating this duty involved banks, the rule would appear to be equally applicable to a licensed and regulated entity like a securities broker (see generally Guice v Charles Schwab & Co., 89 NY2d 31 [1996], cert denied 520 US 1118 [1997]; W.J. Abbott & Co. v Securities & *679 Exch. Commn., 276 F Supp 502, 503-506 [WD Pa 1967]), at least when the broker provides information about a customer’s holdings in a securities account (11 NY Jur 2d, Brokers § 97).
Of particular interest here is the Second Department’s decision in Anchor Lbr. Corp. (242 App Div 656), where plaintiff merchant, a company that was not a customer of defendant bank, made a telephone inquiry regarding the funds available in the account of a customer of defendant’s bank, and, in reliance on this inquiry suffered an unspecified loss (id. at 656).[2] The Second Department held that the bank could be held liable for a violation of this duty because the bank had knowledge that the plaintiff merchant intended to rely on the information and the plaintiff merchant relied on the information to its loss (id. at 656). While the alleged loss suffered by plaintiff here may not be the same as the plaintiff merchant in Anchor Lbr. Corp., the telephone account inquiry at issue in Anchor Lbr. Corp. is essentially indistinguishable from that made on the day of the closing by Kwestel on plaintiffs behalf.
The holding of Anchor Lbr. Corp. fits comfortably within subsequent Court of Appeals decisions setting forth requirements for liability where a commercial transaction involves parties who are not in actual privity and where the person making the representations is not a professional (Kimmell v Schaefer, 89 NY2d 257, 264 [1996]; Goldfine v DeEsso, 309 AD2d 895, 897 [2d Dept 2003]; see also Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 180-181 [2011]).[3] In Kimmell, the Court of
*680 Appeals emphasized that, absent a duty arising out of the speaker’s professional status, a plaintiff must demonstrate “some identifiable source of a special duty of care” (see Kimmell, 89 NY2d at 264). The Court of Appeals in Kimmell ultimately found that such a duty arose because of the defendant speaker’s special knowledge, because the defendant speaker provided business projections with the expectation that they would be forwarded to plaintiff, and because defendant speaker understood that the plaintiff would' rely on the projections (id. at 264-265). Similarly, in Anchor Lbr. Corp. the defendant bank had special knowledge regarding the funds available in the account of its customer, made a direct representation to the plaintiff regarding those funds, and knew that plaintiff was relying on those representations (242 App Div at 656). Although the defendant bank in Anchor Lbr. Corp. did not solicit its contact with the plaintiff merchant and may not have obtained a direct benefit from its providing information regarding the customer’s account (cf. Kimmell, 89 NY2d at 261-262),* **[4] its unique position to know what was in the account, and its general responsibilities to the public are sufficient grounds to find the existence of a special duty of care (see Anchor Lbr. Corp., *681 242 App Div at 656; see also Banque Indosuez v Barclays Bank, 181 AD2d 447, 447 [1st Dept 1992]).
*680 “Banks’ motives in serving as credit references can hardly be described as altruistic, though no doubt headaches (including lawsuits such as this) attend the service. The bank gives credit information as an accommodation to its customer. The customer obviously needs credit references in order to conduct his own business on credit. By serving as a reference, the bank incurs its customer’s favor. The bank thus facilitates its customer’s business success and, presumably, receives its own benefits from the customer’s economic longevity” (453 So 2d at 701-702; see also Management Inv. Funding Ltd. v Merrill Lynch, Pierce, Fenner & Smith, Inc., 2000 WL 145461, *9, 2000 US Dist LEXIS 1224, *29-33 [SD NY, Feb. 9, 2000, No. 93 Civ 3004 (LBS)], read on other grounds sub nom. Compagnie Financiere de CIC et de L’Union Europeenne v Merrill Lynch, Pierce, Fenner & Smith Inc., 232 F3d 153 [2d Cir 2000]).
*681 Applying these principles here, this court finds that plaintiff has sufficiently pleaded facts showing that the Southwest defendants owed Pratt a special duty. Of note in this regard, given the alleged timing of Southwest’s forwarding of account statements to Jemal that were thereafter forwarded to plaintiff, it may be possible to draw an inference that the Southwest defendants knew that the statements were being provided for the purposes of the loan. More important are the allegations that Kwestel, Pratt’s attorney at the closing, spoke directly to Stallones by telephone and informed him of the loan amount and that Stallones responded by telling Kwestel that the accounts had sufficient funds to secure the loans.[5] In addition, SSJ’s letter requesting the account freeze again stated the loan amount, and the Southwest defendants supplied the freeze letters directly to Pratt.[6] Taken together, these facts sufficiently plead the existence of a special duty, in that the Southwest defendants held a special expertise or knowledge with respect to SSJ or Jemal’s accounts, that a relationship of trust or confidence existed between the parties based on direct contacts, and that the Southwest defendants were aware that Pratt would use the information in making the loan to SSJ, and supplied the information for the purpose of the loan (see Kimmell, 89 NY2d at 264-265; Banque Indosuez, 181 AD2d at 447 [found bank had a special relationship with lender with respect to misleading credit reference letter bank had supplied to lender regarding borrower who was customer of bank]; J & J Trading Co., 186 Misc 2d at 59; ADL, LLC, 2010 WL 3925131, *10, 2010 US Dist LEXIS 110563, *33-36; Freund, 2009 WL 2045530, *2, 2009 US *682 Dist LEXIS 57991, *4-7; see also Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood, 80 NY2d 377, 385 [1992]; Barrett v Freifeld, 64 AD3d 736, 738 [2d Dept 2009]; Lyons v Medical Malpractice Ins. Assn., 286 AD2d 711, 711-712 [2d Dept 2001]).
Turning to plaintiffs negligent misrepresentation claim,
“[i]t is well settled that [a] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information” (Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 180 [2011] [internal quotation marks omitted]).
Here, as discussed above, plaintiff has sufficiently pleaded the existence of a special relationship and that Stallones’ representation that there were sufficient funds in the account was incorrect in light of the Southwest defendants’ subsequent representation that there was never more than $300 in the account.
The Southwest defendants, however, assert that plaintiff cannot establish the reasonable reliance element because, as a sophisticated lender, Pratt had a duty to conduct its own investigation to verify the risks it assumed in closing the loan with SSJ. A plaintiff does not have the same duty to investigate when the misrepresentations relate to matter peculiarly within the knowledge of the defrauding party (see Merrill Lynch & Co. Inc. v Allegheny Energy, Inc., 500 F3d 171, 181 [2d Cir 2007]; ADL, LLC, 2010 WL 3925131, *10, 2010 US Dist LEXIS 110563, *33-36; see also DDJ Mgt., LLC v Rhone Group L.L.C., 15 NY3d 147, 153-154 [2010]; Black v Chittenden, 69 NY2d 665, 669 [1986]; Hoeffner v Orrick, Herrington & Sutcliffe LLP, 61 AD3d 614, 615 [1st Dept 2009]) and it would appear that the Southwest defendants would have peculiar knowledge of the value of SSJ’s account. The question of whether Pratt could have found that information via independent means cannot be determined based on the allegations of the complaint.
The Southwest defendants’ related assertion that Pratt cannot reasonably have relied on the statement from the Southwest defendants because Pratt never alleged that it perfected its security interest in the funds also does not preclude justified reliance. In this regard, the freeze agreement, while not providing *683 all the rights associated with a formal security interest, would provide some mitigation of the risk in extending credit (see Management Inv. Funding Ltd. v Merrill Lynch, Pierce, Fenner & Smith, Inc., 2000 WL 145461, *9, 2000 US Dist LEXIS 1224, *29-33 [SD NY, Feb. 9, 2000, No. 93 Civ 3004 (LBS)], revd on other grounds sub nom. Compagnie Financiere de CIC et de L’Union Europeenne v Merrill Lynch, Pierce, Fenner & Smith Inc., 232 F3d 153 [2d Cir 2000]). Any failure to obtain a secured interest in the account would appear to be more relevant to the amount of damages plaintiff may be able to obtain than the reasonableness of Pratt’s reliance.
The Southwest defendants further assert that it was unreasonable for Pratt to solely rely on Stallones’ verbal assurances regarding the value of the account. Indeed, it may have been a better business practice for Pratt to insist on written assurance from the Southwest defendants regarding the value of SSJ’s account. Under the circumstances here, however, where Pratt was requesting information from the Southwest defendants, ostensibly an independent party not directly involved in the loan transaction, Pratt’s reliance on Stallones’ verbal assurances and its failure to obtain written verification directly from the Southwest defendants do not show Pratt’s reliance to have been unreasonable as a matter of law (see Thomas v N.A. Chase Manhattan Bank, 1 F3d 320, 324-325 [5th Cir 1993] [addressing reasonable reliance under New York law]; Community Bank, Lake Oswego, Oregon v Bank of Hallandale & Trust Co., 482 F2d 1124, 1127-1128 [5th Cir 1973]). The reasonableness of Pratt’s reliance on the alleged misrepresentations thus implicate factual issues inappropriate for resolution in the context of a CPLR 3211 motion (US Express Leasing, Inc. v Elite Tech. [NY], Inc., 87 AD3d 494, 498 [1st Dept 2011]). Accordingly, the Southwest defendants are not entitled to dismissal of plaintiff’s negligent misrepresentation claim.
With respect to the negligence cause of action, the finding that the complaint’s allegations make out a special duty satisfies the duty element of a negligence claim (Credit Alliance Corp. v Arthur Andersen & Co., 65 NY2d 536, 551 [1985]). In the absence of additional arguments from the Southwest defendants suggesting that the negligence cause of action is otherwise insufficient (see Taylor v Curry, 107 AD3d 879 [2d Dept 2013]; cf. Tirado v Miller, 75 AD3d 153 [2d Dept 2010]), the motion is denied with respect to plaintiffs negligence cause of action.
Unlike plaintiffs negligent misrepresentation cause of action, plaintiffs common-law fraud cause of action, at least to *684 the extent that it turns on an intentional misrepresentation or a misrepresentation made with a reckless disregard for the truth, does not require a showing of privity or near privity (see Ultramares Corp. v Touche, 255 NY 170, 189-193 [1931]; US Express Leasing, Inc., 87 AD3d at 497; Caprer v Nussbaum, 36 AD3d 176, 195 [2d Dept 2006]). “To make out a prima facie case of fraud, the complaint must contain allegations of a representation of material fact, falsity, scienter, reliance and injury” (Scott v Fields, 92 AD3d 666, 668 [2d Dept 2012]; see also Small v Lorillard Tobacco Co., 94 NY2d 43, 57 [1999]). In light of plaintiffs allegations that the Southwest defendants ultimately asserted that there was never more than $300 in the accounts, it can reasonably be inferred that Stallones’ express assertion that there were sufficient funds in the accounts to secure the loan was either made with knowledge of its falsity or such a reckless disregard for the truth that an inference may be drawn that the Southwest defendants acted with scienter or intent to deceive (see Caprer, 36 AD3d at 195-196; DaPuzzo v Reznick Fedder & Silverman, 14 AD3d 302, 302-303 [1st Dept 2005]; see also State St. Trust Co. v Ernst, 278 NY 104, 111-112 [1938]; Community Bank, Lake Oswego, Oregon, 482 F2d at 1127). Contrary to the Southwest defendants’ assertion, the Southwest defendants did not have to be a party to the loan transaction for them to be held liable in fraud (Ultramares Corp., 255 NY at 189-193; Caprer, 36 AD3d at 195). Plaintiffs assertion that the Southwest defendants concealed information relating to the value of the funds in the account adequately states the existence of a fraudulent concealment cause of action given that the complaint, as discussed above, also shows the existence of a special duty owed by the Southwest defendants (see Dubai Islamic Bank v Citibank, N.A., 256 F Supp 2d 158, 166 [SD NY 2003]; see also Williams v Sidley Austin Brown & Wood, L.L.P., 38 AD3d 219, 220 [1st Dept 2007]; Goldfine, 309 AD2d at 897).
With respect to the breach of contract cause of action, Southwest contends that plaintiff’s pleadings fail to demonstrate that the freeze letters constitute a binding contract between Pratt and Southwest because the freeze letters do not show a manifestation of mutual assent to be bound and because plaintiff has failed to show the existence of any consideration between Pratt and Southwest. SSJ’s letter to Southwest requesting that the account be frozen for the benefit of Pratt during the term of the loan and Southwest’s letters confirming that it had frozen the account and would not release the ac *685 count without authorization from Pratt, however, show that the parties had reached an agreement with respect to all material terms (see Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp., 93 NY2d 584, 589 [1999]; Van Damme v Gelber, 104 AD3d 534, 534-535 [1st Dept 2013]; Knight v Barteau, 65 AD3d 671, 672-673 [2d Dept 2009]).
Southwest’s contention that there was no consideration also fails, at least at the pleading stage. In this regard, a “promisee who has incurred a specific, bargained for legal detriment may enforce a promise against the promisor, notwithstanding the fact that the latter may have realized no concrete benefit as a result of the bargain” (Weston v Smith, 38 AD3d 1224, 1225 [4th Dept 2007] [internal quotation marks omitted]; see Anand v Wilson, 32 AD3d 808, 809 [2d Dept 2006]; see also Holt v Feigenbaum, 52 NY2d 291, 299 [1981]; Management Inv. Funding Ltd., 2000 WL 145461, *9, 2000 US Dist LEXIS 1224, *29-33). Here, plaintiff has at least shown factual issues with respect to the existence of consideration through its allegation that Pratt made its loan of $820,000 to SSJ based, at least in part, upon Southwest’s promise to freeze SSJ’s account (see Weston, 38 AD3d at 1224-1225; Management Inv. Funding Ltd., 2000 WL 145461, *9, 2000 US Dist LEXIS 1224, *29-33). Importantly, even though the freeze letter was not sent until December 2, 2008, plaintiff alleges that Stallones orally agreed to provide the freeze letter before Pratt funded the loan.
As Southwest’s only argument for dismissal of the specific performance cause of action turns on its assertion that there was no viable breach of contract cause of action, the court will not consider whether there are other grounds for finding that cause of action insufficient (see Taylor, 107 AD3d 879; cf. Tirado, 75 AD3d 153).
On the other hand, this court finds that the complaint fails to allege facts showing the existence of a fiduciary relationship necessary for a breach of fiduciary duty claim (Palmetto Partners, L.P. v AJW Qualified Partners, LLC, 83 AD3d 804, 807 [2d Dept 2011]). Despite this court’s finding that the complaint is sufficient to demonstrate a special relationship for purposes of plaintiffs negligence and negligent misrepresentation causes of action, a breach of fiduciary duty claim requires a closer relationship than that of a special relationship for purposes of a negligence or negligent representation cause of action (Banque Indosuez, 181 AD2d at 447; King County, Wash, v IKB Deutsche Industriebank AG, 863 F Supp 2d 288, 314 [SD NY 2012]; *686 Sterling Fed. Bank, F.S.B. v Credit Suisse First Boston Corp., 2008 WL 4924926, *4, *8, 2008 US Dist LEXIS 92759, *12-15, *24-27 [ND 111, Nov. 14, 2008, No. 07 C 2922] [court found allegations sufficient to demonstrate a special duty for a negligent misrepresentation claim but failed to show a fiduciary relationship]).
“A fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation ... It exists only when a person reposes a high level of confidence and reliance in another, who thereby exercises control and dominance over him [or her]” (People v Coventry First LLC, 13 NY3d 108, 115 [2009] [internal quotation marks and citations omitted]; see also Northeast Gen. Corp. v Wellington Adv., 82 NY2d 158, 172-173 [1993]).
Here, plaintiffs allegations in the complaint fail to show such a high level of trust and confidence or the exercise of control and dominance sufficient to establish the existence of a breach of fiduciary duty claim (see Banque Indosuez, 181 AD2d at 447; King County, Wash., 863 F Supp 2d at 314; Sterling Fed. Bank, F.S.B., 2008 WL 4924926, *8, 2008 US Dist LEXIS 92759, *24-27).

. The letter, signed by Jemal and his wife Sharon Jemal, stated: “As you know, SSJ Development LLC has entered into a loan agreement with Pratt Foreclosures LLC wherein SSJ Development LLC has borrowed the sum of $820,000.00 which SSJ Development LLC has agreed to pay pack [sic] in 7 months. Furthermore, SSJ Development LLC has promised to not sell, margin or take any action with respect to the securities in the SSJ Development LLC account numbered #xxxxxxx. Please be advised that until June 28th 2009 or earlier if the loan is satisfied in full, this account shall be frozen and no one, including SSJ Development LLC may trade, sell or margin any funds that are in this account.”

. The decision does not indicate how the loss occurred, i.e., whether the plaintiff merchant extended credit or accepted a check from the bank’s customer (Anchor Lbr. Corp., 242 App Div at 656).

. The line of cases addressing the representations of professionals, such as lawyers and accountants (see e.g. Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood, 80 NY2d 377, 381-382 [1992]; Credit Alliance Corp. v Arthur Andersen & Co., 65 NY2d 536, 551 [1985]; Megally v LaPorta, 253 AD2d 35, 42 [2d Dept 1998]), does not appear to be applicable here. Although securities brokers are licensed and involved in a regulated field, it is not clear that their services would be deemed professional for the purposes of the Credit Alliance Corp. standards (see Chase Scientific Research v NIA Group, 96 NY2d 20, 28-31 [2001]), especially under the facts here, where any statement regarding the funds available in Jemal or SSJ’s account would not involve the exercise of any professional judgment on the part of the Southwest defendants (see ADL, LLC, 2010 WL 3925131, *10 n 6, 2010 US Dist LEXIS 110563, *36 n 6). On the other hand, a broker or bank’s representation regarding the funds available in an account may be considered akin to the performance of the public weigher functions at issue in Glanzer v Shepard (233 NY 236 [1922, Cardozo, J.]) that subsequent courts have deemed a precursor of *680 the professional duty line of cases (see Kimmell, 89 NY2d at 263-264; Ossining Union Free School Dist. v Anderson LaRocca Anderson, 73 NY2d 417, 423-425 [1989]). Ultimately, as discussed with regard to liability under the standards outlined in Kimmell, given a bank/broker’s public obligations (see Anchor Lbr. Corp., 242 App Div at 656), and the direct contact between Pratt and the Southwest defendants at issue here, the court finds that plaintiff has sufficiently pleaded the existence of a duty on the part of the Southwest defendants under the Credit Alliance Corp. test or the Kimmell test.

. Although a bank/broker might not receive a direct benefit for providing a credit reference or providing a customer’s account information, it does receive indirect benefits, as explained by the court in Berkline Corp.:

. Although some cases have declined to find the existence of a special duty based on a single telephone conversation (see Security Pac. Bus. Credit v Peat Marwick Main & Co., 79 NY2d 695, 705 [1992]; Par Plumbing Co. v Engelhard Corp., 256 AD2d 124, 124-125 [1st Dept 1998]; Stafkings Health Care Sys. v Blue Cross & Blue Shield of Utica-Watertown, 221 AD2d 908, 908 [4th Dept 1995]), these cases can be distinguished by the nature of the information to be provided, the specific assurances made by Stallones during the conversation, and the Southwest defendants’ obligation to speak carefully once it chose to speak (see Anchor Lbr. Corp., 242 App Div at 656).

. While the freeze letters (as opposed to Stallones’ oral representations) might not be relevant to any damages suffered by Pratt in extending the loan (Emigrant Bank v UBS Real Estate Sec., Inc., 49 AD3d 382, 385 [1st Dept 2008] [relationship requiring a special duty must exist prior to the transaction giving rise to the wrong]), they may be relevant to Pratt’s decision to extend the loan maturation date and to the extent that Pratt may have failed to seek other means of securing the loan.